## BEN YOUNG v. THE STATE.

### No. 4406. Decided February 24, 1909.

**1.—Disorderly House—Charge of Court.**

Upon trial of keeping a disorderly house, where the evidence was conflicting as to whether defendant controlled the house and permitted lewd women to congregate there, or whether the house was under the control of another, the question should have been submitted to the jury.

**2.—Same—Evidence—Other Transactions.**

Upon trial for keeping a disorderly house it was error to permit to be read to the jury from the docket of a justice of the peace a judgment against a certain woman who had been fined as a vagrant, and who it was said had been a visitor of one of the said disorderly houses.

**3.—Same—Evidence—Opinion of Witness.**

Upon trial of keeping a disorderly house it was error to admit the conclusions and suppositions of witnesses, as to the character of the woman who had visited one of said disorderly houses, to show that she was a prostitute.

**4.—Same—Information—Amendment.**

Where the amendment to the information simply related to the date of the term of court, there was no error in permitting the same after the parties had announced ready for trial.

Appeal from the County Court of Erath. Tried below before the Hon. M. J. Thompson.

Appeal from a conviction of keeping a disorderly house; penalty, a fine of $200 and twenty days confinement in the county jail.

The opinion states the case.

No brief on file for appellant.

F. J. McCord, Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was charged with keeping a disorderly house, under the Act of the Thirtieth Legislature.

The evidence is to the effect that there was one woman at appellant's hotel whose reputation was attacked, and she was at the hotel about the 20th or 21st of December. On the 2d of January there was another one whose character was attacked, called Dolly Adams. Appellant was keeping the hotel, having rented it from Mrs. McAllister. Mrs. McAllister testified that she rented him another house on which she had a lease, known as Bud Goodman's house. This was denied by appellant and his wife. They testified that appellant had not rented this house from Mrs. McAllister, but that she had reserved it in the contract and occupied it herself, at least one of the rooms of the house. It is unnecessary to go into a detailed statement of the evidence on this issue. The conflict was direct. If appellant controlled this house and permitted lewd women to go there and meet men, under the Act of the Thirtieth Legislature he would be guilty. If he did not own or control the house as lessee or tenant, but it was under the control of Mrs. McAlister, then he would not be responsible. In other words, in order to make him liable under the law in regard to the Bud Goodman house and its use, the testimony must connect him with it in some manner as provided by the statute. This issue should have been appropriately submitted to the jury. The woman Dolly Adams, mentioned in the record, was occupying a room in the Bud Goodman house on the night of the 2d of January. Some officers went there, arrested and took her before the justice of the peace, one J. W. Long, who tried and rendered a judgment against her in the sum of $1 on a charge of vagrancy.

Long testified and over appellant's objection was permitted to read to the jury from his docket a lot of entries and the judgment against Dolly Adams, assessing the fine of $1 against her. Various and sundry objections were urged to the introduction of this testimony. Among others, that it was the acts and declarations of third parties. Second, because defendant was not a party to said prosecution and was not called upon to either ratify or disaffirm the recitals and declarations set forth in said judgment. Third, because there was no charge against Dolly Adams as being a common prostitute and engaged in plying her vocation at the premises of defendant, and that defendant was in no way connected with the offense charged and pleaded guilty to by Dolly Adams. Fourth, it was irrelevant and immaterial and does not prove any fact in the charge for which defendant is being tried. Fifth, because it appears that the judgment was rendered subsequently to the acts complained of in the charge for which this defendant was being

tried, and that it is prejudicial to him before the jury. We are of opinion that this judgment and the entries on the justice court docket against Dolly Adams were not admissible against appellant. Therefore the objections were well taken.

While the witnesses Cox and Deason were testifying for the State they were permitted to state that, in their judgment Dolly Adams was a common prostitute. Various objections were urged to this testimony. This was the only time these witnesses had ever seen Dolly Adams; that they had never known her prior to this time, neither personally nor through hearsay, nor had they ever heard of her before. It was but their conclusion and supposition; and was prejudicial to appellant. These are practically the reasons urged why the testimony was inadmissible. The opinion of these officers was not admissible that the woman was a prostitute.

After the case proceeded to trial the county attorney obtained the permission of the court to amend the information. Appellant objected. The information as it originally was, read as follows: "William Pannell, county attorney of the County of Erath, State aforesaid, in behalf of said State presents in the County Court of said county, at the *March Term, A. D.* 1907, *of said court,* that Ben Young in the County of Erath and State of Texas, on or about the 2d day of January, A. D. 1908, and before the filing of this information, did then and there unlawfully, etc." The affidavit charging the offense was filed on the 3d of January, 1908, and the information itself was filed on January 6, 1908. The court permitted the amendment in respect to the term of the court so as to make the information read, instead of March Term *1907,* March term *1908.* This seems to be in accord with the authorities. As a rule, and it seems such have been the construction placed on the statute, that matters of form in informations and indictments must be amended, if at all, prior to the announcement of ready for trial upon the merits by both parties, and not afterwards. See article 587, Code Criminal Procedure, and authorities collated under Article 588 of White's Code Criminal Procedure. But, where the amendment as to form simply relates to the term of the court at which the information or indictment is presented, it has been held to be amendable after the parties have announced ready for trial. See Murphy v. State, 36 Texas Crim. Rep., 24.

We hold, therefore, that there was no error in this proceeding.

For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*