### MATTIE NICHOLS v. THE STATE.

No. 3256. Decided October 21, 1914.

**1.—Keeping Disorderly House—Evidence.**

Where, upon trial of keeping a disorderly house where prostitutes resorted, etc., the State was permitted to introduce testimony that a certain woman in the absence of defendant had told State's witness that defendant knew her and knew the man with her was not her husband, but required them to register as husband and wife to get the room in the alleged house, the same was hearsay, and reversible error. Prendergast, Presiding Judge, dissenting.

**2.—Same—Evidence—Hearsay.**

Where, upon trial of keeping a disorderly house, the State's witness testified that a young fellow told him he had been in bed with appellant at said house, the same was hearsay and reversible error. Prendergast, Presiding Judge, dissenting.

**3.—Same—Evidence—Reputation of House.**

Where, upon trial of keeping a disorderly house, a State's witness testified that he found the defendant in bed with a man in said house, and that she was fined therefor, was admissible, and there was no error. Davidson, Judge, dissenting.

Appeal from the County Court of Dallas County at Law. Tried below before the Hon. W. F. Whitehurst.

Appeal from a conviction of keeping a disorderly house for the purpose of prostitution; penalty, a fine of $200 and, twenty days confinement in the county jail.

The opinion states the case.

*Wm. H. Allen,* for appellant.—On question that defendant was a prostitute and had been fined therefor: Riley v. State, 58 Texas Crim. Rep., 176, 125 S. W. Rep., 582; Moore v. State, 53 Texas Crim. Rep., 559; Gamel v. State, 21 Texas Crim. App., 357; Allen v. State, 15 id., 320.

*C. E. Lane,* Assistant Attorney General, for the State.

DAVIDSON, JUDGE.—There was quite a lot of testimony introduced

or what purports to be testimony, much of which ought not perhaps to have gone to the jury. The State's case, in the main, was made by the testimony of policemen, who said they visited the place and had found couples there, and on two or three occasions their evidence tends to show it was for illicit purposes. They assert that on two or three occasions, or on several occasions, they found men and women occupying rooms in such manner as to indicate they had been in bed together. Two or three of these are shown by common reputation to be prostitutes and some of the evidence perhaps is sufficient to show they had engaged in illicit intercourse. All this was denied by the appellant so far as anything would go to show that the house was a place where prostitutes resorted.

During the trial Roddy, a policeman, was permitted to testify that a woman named Baldwin was found by him in this house with a man, and that they were registered as man and wife. The State was then further permitted to prove, over the objections of the defendant, that in the absence of defendant the Baldwin woman stated to the policeman that Mrs. Nichols knew her, and knew the man with her was not her husband, but they had to mark it on the book that way so as to get the room. He also testified, as shown by the bill, that the Baldwin woman and the man were registered there as man and wife. Various objections were urged to this, among others, that it was made, as stated in the bill, in the absence of appellant, and was hearsay as to her, and inadmissible and irrelevant. The evidence was admitted over these objections. We are of the opinion that this was error. The statement of the Baldwin woman to the policeman Roddy that Mrs. Nichols knew her, and knew the man with her was not her husband, but they had marked it on the book that way so as to get the room, was not provable against appellant. It was hearsay pure and simple. If Mrs. Baldwin had been present and testified and had stated these matters as facts, it might perhaps have been admissible, but her statement to Roddy in the absence of appellant could not be used against appellant before the jury. It was purely hearsay and which in no way was binding upon appellant and not admissible against her. This was damaging testimony, because if appellant knew the man was not the husband of the Baldwin woman and compelled them to register on the book as man and wife in order to get the room, and that in securing the room and occupying it they had carnal intercourse, it would have been damaging against appellant, but the Baldwin woman did not so testify, and in fact she did not testify in the case. Roddy could not repeat what the Baldwin woman had said to him about these matters.

The same may be said in regard to bill No. 4. The same Roddy testified that on one occasion he was at defendant's house and found a young fellow there, and this youngster stated to him that he had been in bed with defendant. That Mrs. Nichols, appellant, was in the next room when the statement was made, and that he did not know whether she heard it or not. This was also hearsay, and should not have been introduced against appellant, unless it was shown that she was in

position to hear what was said. She was not in the room with the parties when the young man made the statement to Roddy. The young man did not testify in the case, and this is but his statement to Roddy, which Roddy produced before the jury. It may be questionable whether or not these facts could be proved against her even by the young man. She was not charged with adultery, but was charged with keeping a house where prostitutes were permitted to resort and ply their vocation. Under the statute and the decisions construing it the woman herself could not keep a disorderly house by her own acts of prostitution. The allegations were that she kept a house where prostitutes resorted. She could not be charged with resorting to her own house. The statute does not so contemplate. The statute was passed to punish the party for permitting other women to resort there than herself.

Roddy was also permitted to testify that on one occasion he found a young man in the room with defendant, and the State then proposed to further show by him that "We charged her (meaning the defendant) with being a common prostitute, and we locked the man up too, but he paid his fine and she paid a fine also." And the State further proved by Harrison that he found the defendant in bed with a man, or evidence to that effect. Various objections were urged to this. It may be very doubtful whether this testimony was admissible on a charge against appellant for keeping a disorderly house, that is, a bawdy house where prostitutes were permitted to resort to ply their vocation. The fact that appellant herself committed adultery with men would not sustain the charge that other women came there. The writer is of the opinion that this testimony should not have been permitted to go to the jury, nor was it permissible to show that she had been fined, and also that the man had been fined, as we understand the ruling of this court. See Young v. State, 55 Texas Crim. Rep., 383; also Riley v. State, 58 Texas Crim. Rep., 176.

For the errors indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

HARPER, JUDGE.—I concur in holding that the testimony of Roddy, wherein he testified that a woman named Baldwin, "in the absence of appellant had told him, Roddy, that appellant knew her, and knew the man with her was not her husband, but required them to register that way to get the room," and the testimony of Roddy wherein he testified a "young fellow told him he had been in bed with appellant," is inadmissible. Neither of these witnesses testified in the case, and appellant is not placed in position to have heard them make the statements to Roddy. The other testimony I think admissible.

PRENDERGAST, PRESIDING JUDGE.—In this character of offense I believe all the evidence was admissible, and the case should be affirmed. Cunningham v. State, 73 Texas Crim. Rep., 565, 166 S. W. Rep., 521, and cases cited.