## TOM MURPHY v. THE STATE.

### *No. 934.   Decided April 15th, 1896.*

**1.   Indictment—Amendment of—Organization of Grand Jury.**

The statute, regulating the requisites of an indictment, does not make the date of the organization of the grand jury one of the essential elements of an indictment; and, it being wholly immaterial whether that fact appears upon the face of the indictment or not, it is not error, where it does not so appear, for the court to permit the indictment to be amended in that regard, and this even though such amendment be permitted after an announcement of ready for trial.

**2.   Competency of a Child as a Witness—Tests as to.**

Where it was objected to the competency of a child 10 years of age as a witness, that he did not understand the obligation of an oath and the pains and penalties for perjury as prescribed by law, and it appears that he understood in part the obligation of an oath, but manifested a want of knowledge as to the punishment by the courts for perjury.   Held: Under the facts stated, that the investigation was incomplete, and the inquiry should have been pressed further; and, if necessary, such information brought home to the witness as would have enabled it to be seen whether or not he had sufficient intelligence to understand the obligation of said oath.

**3.   Evidence—Fruits of the Crime.**

On a trial for murder, it was admissible to prove the finding of a pistol belonging to defendant's brother in a trunk, in a room where the two brothers had slept on the morning of the day after the homicide.

**4.   Same.**

The finding of a pistol belonging to defendant's brother, if the same was found by means of information derived from the brother after the conspiracy between the brothers as to the commission of the homicide was at an end, would be inadmissible evidence against the defendant.

**5.   Same—Blood Stains.**

On a trial for murder, where the State had proved bloody spots on the shirt of, and blood above the eye, as incriminative facts against the defendant.   Held: That it was error to refuse to permit defendant to prove that, on the night before the homicide, defendant had borrowed a handkerchief from the witness to wipe his (defendant's) nose, which he (defendant) said was bleeding, and that defendant offered him (witness) the handkerchief back, but he (witness) told him to throw it away, as it was bloody.

**6.   Murder—Evidence— Circumstantial Testimony — Motive on Part of Other Persons to Kill Deceased.**

On a trial for murder, where the evidence is circumstantial, it is competent and relevent to prove motive on the part of some other person, than the accused, to commit the crime.   In a case depending wholly upon circumstantial testimony, if the evidence reasonably shows that some other person committed the offense, the accused should be acquitted; or, if the circumstances, which tend to show that some other person may have committed the crime, are sufficient to raise a reasonable doubt of defendant's guilt, an acquittal should follow.

**7.   Circumstantial Evidence.**

In a case wholly depending on circumstantial evidence, it is the duty of the jury to explore every reasonable hypothesis consistent with the innocence of the defendant before they would be authorized to convict.

**8. Same—Circumstantial Evidence—Test as to Sufficiency of.**

Circumstantial evidence must not only be sufficient to convict the defendant on trial, but, in testing its sufficiency, it must exclude the hypothesis that somebody else committed the offense, and every circumstance, however remote, that may tend to shed light upon the issue is admissible.

**9. Murder—Charge—Arrest by Officer—Alibi.**

On a trial for murder, where there was no evidence that deceased, who was an officer, was killed in an attempt to arrest defendant for unlawfully carrying a pistol, it is error for the court to submit a charge predicated upon such a theory; and where the defense was an alibi, said charge was specially obnoxious to the objection that it impinged upon the only defense and was of a character calculated to injure and impair the rights of defendant.

APPEAL from the District Court of Navarro. Tried below before Hon. RUFUS HARDY.

The indictment charged Jim and Tom Murphy, this appellant, jointly with the murder of G. C. Taylor. In this proceeding, Tom Murphy was alone tried; the trial resulted in his conviction, the punishment being assessed at thirty-four years' imprisonment in the penitentiary.

On Sunday, the 23rd day of September, 1894, about 1 o'clock p. m., G. C. Taylor, who was then superintendent of the Navarro County poor farm, was killed by being shot with a pistol or gun while he was traveling the public road from Corsicana towards his residence at "the poor farm," of which he was superintendent.

The killing took place about two miles east of Corsicana on said road and at a place where the Corsicana and Bazette road intersects said poor farm road. The poor farm road leads in a northerly direction from the place where Taylor was killed to the poor farm residence, about three-quarters of a mile, and beyond there to the Corsicana and Chatfield road. The Bazette road leads in a south-easterly direction from the spot where Taylor was killed through a dense forest of trees and briars in Chambers creek bottom and across Chambers creek, which is about two or three miles from the spot where Taylor was killed, affording a good covering of timber from there to the Trinity river, some twenty miles.

There were no witnesses to the killing, but the facts detailed by the witnesses show a fierce struggle. Taylor was shot four times; his clothing powder burned and the horse he was riding was powder burned, the mane and shoulder in such manner as to show that the man or men who did the shooting stood on the ground in front of Taylor. His body lay nearly in the middle of the road, and his pistol (a 41 Colt's) was found with one barrel discharged on the ground near his right hand. Taylor was a stout, active man, always carried a pistol, and the evidence showed that on one occasion he had fired upon and wounded a poor farm convict, who was endeavoring to escape. It was also shown, that on account of his official character, as superintendent of the poor farm, he had had several difficulties with convicts; and, in connection with this testimony, defendant offered to prove that several of these parties had made serious threats against the life of deceased. Which evidence was offered upon the theory that it would show a motive on the part of these

ex-convicts to take the life of deceased. This evidence was excluded by the court, and defendant saved a bill of exceptions.

It is shown by the testimony, that defendant, Tom Murphy, and his brother, Jim, left Corsicana about 12 o'clock, m., or a few minutes before that time, traveling in a top buggy, along the same road on which deceased was killed. Deceased left a short time after they did, and one mile beyond the city these parties were seen about eight hundred yards ahead of deceased, and whenever seen, up to the place of the killing, were still ahead of him several hundred yards. Several parties lived not far from the place where the homicide occurred; and while none of them saw the shooting, several of them heard the shots fired in that direction. And in a few minutes thereafter, these parties saw defendant and his brother, Jim, driving, in a rapid gait, from that direction. The witness, Jimmie Griggs, testified that he was playing in the yard with some other children about three hundred yards from where the body of deceased was afterwards found. That he heard the pistol shots in that direction, and, in a very short time thereafter, saw defendant and his brother in a buggy, coming rapidly down the road from that direction; and, as they passed him, he noticed that one of the men had a pistol in his hand, which he seemed to be examining. This boy also testified, that shortly after the buggy passed, the deceased's horse also came down the road, not very far behind the buggy. He caught the horse and tied him to the fence, and that that evening a boy came and took the horse to the poor farm. This witness, Jimmie Griggs, was a negro boy ten years of age, and the question of his competency as a witness was investigated, at the instance of defendant, when he was offered as a witness. After his examination, the court, over objections of defendant, held him competent, and permitted him to testify. To which defendant saved a bill of exceptions. The defendant and his brother, Jim Murphy, drove on in their buggy to the house of Eugene Meadows, a brother-in-law, which was about one or one and one-quarter miles north-east of the poor farm. When they reached there, Meadows and his wife were about going to dinner. They declined to take dinner, and appeared to have been both very much under the influence of liquor, especially the defendant,. Tom Murphy. They told their sister that they desired to go to bed, and she having arranged the bed for them, they retired and went to sleep. They remained asleep until the officers came, about 4 p. m., and arrested them. The officers examined the clothing, and found something like a blood stain on the sleeve of one of the shirts. There was also a little streak of something that looked like blood over the eye of Tom Murphy;. and on his forehead was a little spot that had the appearance of clotted blood. The officers also found an empty 38-caliber Winchester shell lying near the table on the floor; and also found several similar cartridges in the buggy out in the yard. It was in evidence, that the 38-caliber Winchester cartridges fitted a 44-caliber Colt's pistol. The witness, Kauffman, who was a pawnbroker, testified, that on Saturday, the day before the homicide, he had sold Jim Murphy a Colt's 44-

caliber pistol and a box of No. 38 Winchester cartridges. The officers testified, that, at that time, they did not find a pistol or firearm of any kind about the premises of Meadows. After the parties had been placed in jail, the sheriff testified that he had a conversation with both Jim and Tom Murphy—two days after their arrest—but at different times; and that the parties were not together when he had these conversations. He says, that from information which he received, but he does not state from whom, he went back to the house of Meadows, and there found a pistol in the bottom of a trunk in the dining room (which he exhibits to the jury) and the same was identified by the witness, Kauffman, as the same he had sold to Jim Murphy on Saturday. The evidence shows that the defendant, Tom Murphy, had no weapons of any kind; the evidence showing that his pistol had been taken from him by an officer in Corsicana the day before the homicide. The evidence fails to show any motive which may have actuated these parties to commit the homicide; that they were friendly towards the deceased, and had been his neighbors for two years before. In addition to the fact, that defendants showed that other parties had threatened to kill deceased, and which evidence was excluded by the court, defendants also proposed to prove, by witnesses, that they had heard the deceased express apprehension that some of the convicts, or ex-convicts, from the poor farm, would kill him. That he had to whip a great many negroes on the poor farm and they had threatened to kill him. Which evidence was excluded by the court and an exception reserved to the ruling. Defendant did prove, by his witnesses, Hickey and wife, that in a few minutes after they heard the firing, a copper-colored negro, whom they did not recognize, passed their house, riding a sorrel colored horse most rapidly from the direction in which the shots had been heard. The defense was an alibi.

A further statement of the case is unnecessary.

*Croft & Croft* and *George W. Murphy*, for appellant.—The second assignment as to the court allowing the District Attorney to amend the indictment by inserting the word "October" with the reasons given, is respectfully submitted under the following authorities: Osborne v. State, 23 Tex. Crim. App., 431; Robbins v. State, 9 Tex. Crim. App., 666; Cox v. State, 7 Tex. Crim. App., 495.

The court erred in holding the little negro, Jim Griggs, a competent witness. Ake v. State, 6 Tex. Crim. App., 398; Holst v. State, 23 Tex. Crim. App., 1.

The court erred in excluding the evidence offered by defendant, as to the bleeding of defendant's nose at 12 o'clock at night of the day preceding the killing.

The court erred in refusing the testimony of witnesses as to threats of convicts and ex-convicts and the statements of deceased, shortly before his death, with regard to his fear of such convicts whom he had whipped or shot. Preston v. State, 8 Tex. Crim. App., 30; Simms v. State, 10

Tex. Crim. App., 131; Langford v. State, 17 Tex. Crim. App., 445. The court erred in giving the special charge asked by State's counsel, with regard to a homicide committed in resistance to an officer attempting to arrest for an unlawful carrying of weapon; there being no testimony authorizing or warranting such charge.

The charge of the court upon circumstantial evidence was erroneous; and, the court also erred in refusing defendant's special instruction, requested for the purpose of curing the defect in the court's charge on circumstantial evidence.

*Mann Trice*, Assistant Attorney-General, for the State.

[No briefs have been found for the State in the record.]

DAVIDSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for the term of thirty-four years; and from the judgment and sentence of the lower court he prosecutes this appeal. The conviction depends wholly upon circumstantial evidence, and the assignments of error bring in review the action of the court in allowing the amendment of the indictment, the overruling of a motion for a continuance, and the charges given by the court, and those requested and refused on the part of the appellant, and also questions as to the admissibility of testimony. We will only notice such assignments as are necessary to a proper disposition of the case. The appellant excepted to the action of the court in permitting the County Attorney to amend the indictment by inserting the word "October" in the beginning part thereof, so as to show the date of the organization of the grand jury which found the indictment. To said bill is appended three grounds of objection, and from these it would appear that the amendment was allowed after the parties announced "ready," and entered upon the trial. The bill itself, however, does not so certify. If, however, the amendment was made after the parties entered upon the trial, such entry of the word "October" was merely formal, and was not necessary, and the trial could have proceeded without such amendment. The minutes of the court show the date of the organization of the grand jury. The statute regulating the requisites of the indictment, does not make the date of the organization of the grand jury one of the essential elements of such indictment. The entry of such date is, therefore, merely formal. It is wholly immaterial whether the date of such organization appear in the face of the indictment or not, and the allowance of such amendment by the court constituted no error. See, Osborne v. State, 24 Tex. Crim. App., 398. Appellant objected to the testimony of the State's witness, Jim Griggs, on the ground, as stated by him, that said witness did not understand the obligations of an oath, but that he thought he would go to the bad place when he died if he did not tell the truth; that he did not know that he could be punished by the courts here for not telling the truth. From this it would appear that the witness believed in a state of future rewards

and punishments. He does not seem, however, to have understood the pains and penalties for perjury, as provided by law. No religious form of belief is required by our law in order to qualify a witness to testify. As to children, our Code provides that, after being examined by the court, if they appear not to have sufficient intellect to relate transactions in respect to which they are interrogated, or do not understand the obligation of an oath, they shall not be permitted to testify. In this case, the witness was 10 years of age. It does not appear, from the bill, that he did not have sufficient intellect to relate the matters about which he was a witness. He did understand, however, that part of the obligation of his oath relating to a future state of rewards and punishments; and, while he manifested a want of knowledge that he could be punished by the courts for perjury, yet his investigation in this regard appears to have been very incomplete. This inquiry should have been pressed further, and, if necessary, such information brought home to the witness, and then it could be seen whether or not he had sufficient intelligence to understand the obligation of said oath.

An exception was taken to the introduction of the testimony of Weaver as to his finding the pistol of Jim Murphy in a trunk at the house of Meadows, in a room where the boys slept together on the evening of the day and after the homicide. The evidence that he so found the pistol was admissible. It was not proper, however, that he should state that he found said pistol after he had a conversation with the defendant. The fact was that he found the pistol in pursuance of what Jim Murphy told him, and, for aught that appears, Jim Murphy's disposition of the pistol was after any conspiracy that may have existed between Jim Murphy and Tom Murphy in regard to the homicide had ceased. We fail to see the pertinency or materiality of the testimony of the witness, T. J. Luster, to the effect that he arrested Tom Murphy, the day before the homicide, in Corsicana, and took a pistol from him, which he kept for three or four months thereafter. This evidence was immaterial, however, and could not have prejudiced the appellant, Tom Murphy. The effect of it was really to his advantage, in that it showed that, on the occasion of the homicide, he was very likely not armed, and that his brother, Jim Murphy, only had a pistol. The appellant in this case offered to prove by a witness that, on the night before the homicide, the defendant, Tom Murphy, asked witness to lend him his handkerchief; that his nose was bleeding; that he wanted it for the purpose of wiping his nose. On objection by the State it was excluded. In view of the fact that the State brought to bear against the defendant bloody spots on his shirt and blood above his eye as incriminative facts, it would appear that the testimony above excluded should have been admitted. It is true that the witness says that it was dark when defendant borrowed his handkerchief, as he said, for the purpose of wiping the blood from his nose, and he did not see any blood; that the defendant offered him the handkerchief back, but he told him to throw it away, as it was bloody. Yet this circumstance happened at a time when it is not

reasonable to believe that it was fabricated, and, in connection with other testimony, would serve possibly to account for the blood found on the defendant's shirt and person. At least, it was competent for the circumstance to go to the jury for what it was worth on that issue. Bill of exceptions No. 9 is to the action of the court in refusing to allow certain witnesses for the appellant to testify as to threats made by certain parties against deceased. It was proposed to prove that one Alex Breadland had threatened to kill Taylor for shooting at him while attempting to arrest him; and it was also proposed to prove that one Ben Younger, who had worked on the poor farm for the deceased, said that he expected to kill Taylor for whipping him while on the poor farm. It was also proposed to prove, by certain witnesses, that, some time prior to the homicide, they heard the deceased express apprehension that some of the convicts or escaped convicts on the poor farm would kill him; that he had to whip a great many negroes on the poor farm, and they had threatened to kill him. As to the latter portion of the said testimony, we know of no rule that would authorize its admission. It was the statement of no fact, but merely an opinion of apprehension on the part of the deceased, and was hearsay. As to the evidence of threats to kill, made by other parties, the general rule has heretofore been stated by this court in effect as follows: In a case of circumstantial evidence, it is relevant to prove motive on the part of some other person than the accused to have committed the killing. See Kunde v. State, 22 Tex. Crim. App., 65.

We would further observe, in regard to this character of testimony, that, in a case wholly depending on circumstantial evidence, it is the duty of the jury to explore every reasonable hypothesis consistent with the innocence of the defendant before they would be authorized to convict him. In other words, if the evidence reasonably shows that some other person than the accused committed the offense charged, it is their duty to acquit; or if the circumstances which tend to show that some other person may have committed the crime are sufficient to raise a reasonable doubt of the defendant's guilt, an acquittal should follow. This is in accord with the rule on circumstantial evidence. It must not only be sufficient to convict the defendant, but, in testing its sufficiency, it must exclude the hypothesis that somebody else committed the offense. While this is the rule laid down with reference to the charge of the court on circumstantial evidence, the testimony itself can hardly be circumscribed with such limitations; the rule as to circumstantial evidence being, as to its admissibility, that every circumstance, however remote, that may tend to shed any light upon the issue in the case, is admissible. So that, in the admission of testimony, the rule, as we understand it, is more latitudinous. In other words, the circumstances themselves, upon any given theory, may not present an hypothesis entirely reasonable. Still it would not follow that such circumstances are not admissible, or that the jury would not have a right to consider them in connection with other circumstances and theories in the case. This case is of a peculiar

character. Generally, in cases of a circumstantial character, some motive is assigned to the perpetrator of the homicide. In this transaction the defendant and his brother, prior to the homicide, appear to have been on the most friendly terms with the deceased. It appears that others in that community, or who had previously lived there, entertained feelings of hostility and bitter animosity against the deceased. The defendant proposed to prove such hostility on the part of two such persons, and there appears in the record some evidence of the proximity, on the day of the homicide, of other persons, whose identity was not recognized. In a case of this character, it was the duty of the court to admit every fact and circumstance that tended to establish the theory that any other person than the defendant committed the homicide. This was called for in order to enable the jury to explore every avenue consistent with the innocence of the defendant; and, in our opinion, the testimony offered should have been admitted.

On request of the District Attorney, the court gave the following charge to the jury, to-wit: "If an officer sees any person with any pistol, carrying the same unlawfully, such officer has the right, without warrant, to arrest such person; and if such person so unlawfully carrying said pistol shall resist arrest by such officer, and in so doing shall kill such officer, though such officer is attempting to arrest him without warrant, and although it may be necessary for such officer to use force in making such arrest, provided that such officer use no more force or violence than was reasonably necessary to effect such arrest, yet such killing would be unlawful, and will be murder in the first degree, or murder in the second degree, according to whether the same is committed with express malice or implied malice, as explained to you in the main charge." Appellant excepted to this charge, assigning, among other grounds, that there was no evidence on which to base such a charge. We have examined the record carefully upon this point, and all of the evidence we can find bearing even remotely upon this proposition is to the effect that the deceased was an officer, and that he was killed by some person with a pistol or a gun. The defendant and his brother, on the day of the homicide, left Corsicana with a pistol. About two days after the homicide, the pistol they had was found at the home of their brother-in-law, Meadows, in a trunk, in the room where they slept. So far as the record discloses, no human being saw any part of the difficulty in which the deceased lost his life. The defendant himself relied upon an alibi, and the only evidence that tended to connect him with the offense is of a purely circumstantial character. There is not one word in the evidence with reference to an arrest or a proposed arrest of the defendant or his brother on account of his carrying a pistol, nor is it shown anywhere that the deceased knew that the defendant or his brother had a pistol on that day. As the record presents itself to us, it is absolutely bare of any testimony upon which the charge in question could have been predicated; and, inasmuch as the defense relied upon by the defendant was an alibi, and that he did not commit the act, for the

court to instruct the jury, even by a proper charge, in regard to an arrest of defendant by deceased for carrying a pistol was to impinge upon the only defense set up by him. Moreover, the charge, as given, was not a correct presentation of the law, if the facts had shown that the homicide occurred in an attempt by the deceased to arrest the defendant. The proof showed that the defendant and his brother lived some fourteen miles from Corsicana; that his brother, Jim, had purchased the pistol at Corsicana the day before; and that, on the day of the homicide, they were en route, by their brother-in-law's, Meadows', on their journey home. Under such circumstances, if the court was authorized to charge at all upon an arrest for unlawfully carrying a pistol, the jury should have also been instructed that the defendant or his brother, if they had purchased the pistol in question in Corsicana, and were then carrying it home, had a right so to do; and that the deceased, under such circumstances, was not authorized to arrest them for unlawfully carrying a pistol. The charge in question was not only incorrect, but, as stated before, it was absolutely uncalled for, as there was no phase of the testimony invoking this charge. It was excepted to at the time, and it was of a character calculated to injure and impair the rights of the appellant under the circumstances of this case. Complaint is also made that the charge of the court on circumstantial evidence was not full enough, and a number of charges were asked by the appellant on that subject. The charge in question leaves out some of the approved forms. Without passing on this question, we would suggest that it is always best to follow the approved forms on this subject. In the view we take of this case, it is not necessary to discuss other matters assigned as error; but, for the errors pointed out, the judgment and sentence of the lower court is reversed, and the case remanded.

*Reversed and Remanded.*