BREAUX, C. J.
The grand jury of the parish of Iberia having indicted Walter Sheppard for breaking and entering in the nighttime, with intent to rob and assault,1 he is found guilty as charged, and sentenced to life imprisonment.
He appeals from the ruling of the district judge refusing to set aside the general venire and to quash the indictment.
Defendant charges that the jury commissioners were interfered with by an outsider, an attorney at law, who has a large practice before the court. That he suggested names to the commissioners of persons to serve as jurors, and that some of these names were placed in the general venire box.
■ It appears that the jury commissioners met in order to draw the general venire of jurors to the extent necessary to supplement the jury list, to make up the 300 names required, and to draw the grand jury for the term. i
It is charged further that, while the jury commissioners were holding their meeting and engaged in selecting the jury, the attorney in question did suggest some names which were accepted and placed in the general venire box. Evidence bearing upon the charge was admitted. It shows that he was present part of the time, and that he did offer objections and make suggestions, which occasioned unfavorable comment among the bystanders particularly.
One of the deputy clerks who testified as a witness was present, and on hearing the remarks, which he deemed of an interfering turn, beckoned to this attorney not to thus converse with the jury commissioners touching their duty. Another deputy clerk was more emphatic, and said that it was a shame.
Five or six names were suggested by him. He also made objection touching several of the persons mentioned as proper persons to be appointed, on the ground that they were incompetent and not of age, and not manly enough to serve on jury. There were a number of similar acts done, according to the testimony, which is quite lengthy, upon the subject.
The state introduced evidence sustaining the good name of the jury commissioners, as being men of good intention and above reproach.
We may as well state here that one of the defendant’s witnesses testifying was questioned in regard to the character of the jury commissioners. He was requested as a witness to state the occupation they followed and their standing in the parish. He said: Arthur Le Blanc is a farmer and is considered among the best men in the community. John De Valcourt is a bookkeeper, whose standing is high. Everard *486 Gary is a farmer; one of the best men of the community. Demas Mores! is a mechanical engineer and capitalist, who stands very high in the parish. Numa Drouet is a farmer of good standing. “To my knowledge they are all high minded gentlemen,” including, we infer, the clerk of court.
It is well to further state that none of the names suggested by the attorney, of whose acts the motion to quash complains, were placed in the grand jury box; nor were any of the names of men suggested by him to be placed in the general venire box selected for service on the petty jury in the pending case; that is, they were not drawn to serve on the petty jury at the term of court at which the defendant was tried.
The jury commissioners testified that they were moved by proper motives in discharging the functions of their trust, and that they were not influenced by any suggestion made.
Officers present, at the time that the jury was drawn, expressed themselves in terms of disapproval. The body, through all of its members, tardily it is true, yet it must be said earnestly, objected. And the incident terminated.
Unquestionably the names of the jurors should be selected by the jury commissioners without the least suggestion on the part of any one.
After having considered the acts complained of, the question arises: Are the grounds sufficient, under the statute cited infra, to justify the court, were it to quash and set aside the general venire for the term?
In view of the provisions of the statute, it would be difficult to construe the acts of the jury commissioners as a wrong which amounted to irreparable injury to defendant and a fraud which deprives him of a fair and impartial hearing. Act No. 185, p. 216, of 1S9S.
The clause of the statute to which we allude was touched upon in a case of a comparatively recent date, in which it was decided, as expressed in the syllabus, that the general venire of jurors should not be set aside for defects and irregularities in its selection, unless it should appear that some fraud had been practiced or some great wrong committed which would work irreparable injury to the accused. State v. Thompson, 104 La. 167, 28 South. 882.
In the pending case there was no fraud or wrong committed by the jury commissioners to injure the defendant in any way.
We are constrained to hold that the complaining defendant has no ground on this score upon which we can possibly grant a new trial.
The jury commissioners’ action was not fatally irregular.
We will state, before leaving this point, that in our opinion it was not the intention of the lawmaking power that the statute should in all of its details be considered mandatory. It is to be considered in effect mandatory, whenever it appears that there was fraud or' wrong committed, which shows directly or inferentially that it must have prejudiced the defendant.
We will state again,1 before leaving this point, that the testimony showed that the defendant could not have been injured, because none of the names suggested by the attorney in question, as before stated, were drawn to serve on the petty jury during the week that he was tried, and none of them served on the grand jury.
We have not found that the irregularity charged bore particularly upon the rights of any one. It was improper; but the impropriety, so far as we have been able to discover, never reached a concrete state.
We leave this branch of the motion and pass to the complaint that the commissioners in a body did not select the members of the grand jury.
*487 Another proposition urged in behalf of defendant arises from the fact that the clerk of the court did not write the names of all jurors on separate slips of paper.
We take up these two questions in their reverse order.
True, as contended by learned counsel for the accused in his argument in support of the proposition that the clerk should have written the names of jurors on separate slips of paper, that the clerk should have closely followed the statute. Section 4 of Act No. 135, p. 218, of 1898.
We must state, in justice to the clerk, the evidence does not show that he (the clerk) failed to write the names of jurors on separate slips to be placed in the general venire box. But the evidence does show his failure to follow the statute, which requires him to write the names of grand jurors on separate slips, to be inclosed in an envelope and placed in the grand jury box. He had written names on a few of these slips, and, as to the other slips, he did not identify the handwriting. He did not, however, disavow the slips with names thereon, not written by himself.
It appears that the commissioners had properly selected names of the'grand jurors from the general venire. There was no objection to these names. They were placed in the grand jury box and a list retained of them.
The failure of the clerk to write these names on separate slips did not have the effect of vitiating the grand jury, in view, particularly, of the curative provision of the statute, to which we have before referred.
We avail ourselves of the opportunity to say that the clerk should always follow the statute, for, in any case in which it can be reasonably inferred that the complaining party has been prejudiced by the omission, it would necessitate the setting aside of the venire.
The next charge is that the members of the commission divided their duties. That there was a division of the work; each selecting a number from his own locality or from the neighborhood in which he resided.
There was irregularity in the selection and want of common deliberation over names; but before making the selection the jury had some talk in regard to the selection made by each, and then the selection was made.
The method followed does not particularly commend ■ itself. Strictly, the commissioners should have met and then proceeded in common to select the number of names required.
There was, however, if not a very close, still a substantial, compliance with the statute. There were irregularities decidedly proper to avoid, but not illegalities.
The irregularities, in order to be fatal, must show great wrong to the accused. State v. White, 46 La. Ann. 1273, 15 South. 623.
Again, it was held that the objections to the drawing of the jury are disposed of, if defendant fails to show that fraud personal to him has been practiced. State v. Green, 43 La. Ann. 405, 9 South. 42.
The fraud or wrong must directly affect the accused in order to afford ground. State v. Taylor, 44 La. Ann. 784, 11 South. 132.
The following excerpt is in point, quoting:
“But notwithstanding these decisions, the trend of authority is that the mere fact that the officers intrusted with the several duties prescribed failed to conform precisely to such requirements will not invalidate their action, unless it appears, or may be reasonably inferred from the circumstances, that the complaining party has been prejudiced, or that injury has been sustained by reason of the neglect or omission charged.” Eney. of Pleading and Practice, verbo “Jury,” vol. 12.
We are not of the opinion that we should remand this case for a new trial.
It is therefore ordered, adjudged, and decreed that the judgment appealed from is affirmed.