(96 South. 53)

No. 25571.

**STATE v. JACKSON.**

(April 2, 1923.)

*(Syllabus by Editorial Staff.)*

1. **Criminal law ⬅=338(2)—When evidence circumstantial, every circumstance tending to shed light on issue is admissible.**

In cases wholly depending on circumstantial evidence, every circumstance; however remote, that may tend to shed any light on the issue, is admissible. .

2. **Homicide ⬅=166(8)—Remarks by defendant concerning deceased's wife held admissible to show motive, and not inadmissible because of remoteness.**

Where evidence was wholly circumstantial, evidence that defendant eight months before killing expressed intention of visiting deceased's wife, and about six months before said he would have her if he had to kill deceased, was admissible to show motive, and not inadmissible because of remoteness.

3. **Criminal law ⬅=1111(3)—Court's statement in per curiam to bill of exceptions held conclusive.**

The Supreme Court must accept as true the statement in trial judge's per curiam to bill of exceptions that question of race prejudice was not mentioned in the case.

4. **Criminal law ⬅=1036(1)—Objection to evidence on ground of race prejudice not reviewed when not made below.**

Where objection was not made to evidence on ground that it was appeal to race prejudice, such ground of objection cannot be reviewed.

5. **Homicide ⬅=158(3)—Threat to kill white man held not threat against white race generally and to be interpreted in light of circumstances.**

Defendant's statement that he was "going to knock one [a white man] over in a few days" could not be restricted to threats against the white race as a class, and must be interpreted in light of all the circumstances to ascertain if deceased came within its scope.

6. **Homicide ⬅=158(3)—Threat two days before killing to kill unnamed person held admissible.**

Threat by negro two days before killing of white man to kill an unnamed white man was admissible where the case depended wholly on circumstantial evidence.

7. **Jury ⬅=52—Jurors not required to be qualified electors.**

Act No. 135 of 1898 does not require a juror to be a qualified elector.

8. **Jury ⬅=82(2)—Selection of qualified electors only not ground for challenge unless fraud or wrong committed which would work irreparable injury.**

That jury commission selects names of qualified electors only is not sufficient cause for challenge to general venire, or any portion thereof, under Act No. 135 of 1898, § 15, unless some fraud was practiced or great wrong committed that would work irreparable injury.

9. **Jury ⬅=62(3)—Commission may use registration lists in obtaining names.**

Under Const. 1921, art. 8, § 1, parish registration lists are reasonably accurate guide to qualifications of jurors within Act No. 135 of 1898, § 1, and jury commission may use such lists as they might use or any other source of information in obtaining names of eligible citizens.

**10. Criminal law ⟨⟩1178—Contention presumed abandoned when not discussed in brief.**

Where contention that statute is unconstitutional is not discussed in the brief, it will be presumed abandoned.

**11. Criminal law ⟨⟩972—Disqualification of grand juror not ground for motion in arrest when not apparent on face of record.**

That grand juror was under indictment is not ground of motion in arrest when not apparent on face of record, but only by aid of testimony.

**12. Criminal law ⟨⟩970(4)—Disqualification of grand juror cannot be first urged after conviction without averment and proof that it was not known before.**

Accused cannot after conviction avail himself of disqualification of grand juror in the absence of averment and proof that he only knew of the disqualification after conviction.

**13. Criminal law ⟨⟩970(4)—Disqualification of grand juror must be set up by motion for new trial, and not motion in arrest.**

Disqualification of grand juror can only be set up for the first time after conviction by motion for new trial, and not in arrest of judgment.

**14. Criminal law ⟨⟩1171(3)—Not prejudicial to argue that grand jurors might as well be told not to find indictment on circumstantial evidence if there could be no conviction.**

Where defendant's counsel argued that jury should not convict on circumstantial evidence, however strong, it was not prejudicial for district attorney in reply to argue that grand jurors might as well be instructed not to return indictments if there could be no conviction on such evidence.

O'Niell, C. J., dissenting.

Appeal from Thirteenth Judicial District Court, Parish of Rapides; J. A. Williams, Judge.

Cap Jackson was convicted of manslaughter, and he appeals. Affirmed.

T. F. Hunter, of Alexandria, for appellant.

A. V. Coco, Atty. Gen., of New Orleans, and Cleveland Dear, Dist. Atty., of Alexandria (T. S. Walmsley and J. B. Nachman, of Alexandria, of counsel), for the State.

LAND, J. Defendant was convicted of manslaughter under an indictment for murder, and was sentenced to be confined at hard labor in the state penitentiary for a term of not less than 14 nor more than 18 years.

The record contains five bills of exception. Bills Nos. 1, 2, and 3 were reserved to the admission of testimony offered by the state and tending to show motive or malice. The homicide is alleged to have been committed April 18, 1922, and from the per curiam of the trial judge we learn that the state was compelled to rely upon circumstantial evidence entirely for conviction. This admission is also made in the application for a new trial, coupled with the statement that "the killing of Ed. Lincecum, with whose killing the defendant was charged, was practically an assassination."

[1] In cases wholly depending on circumstantial evidence, the rule as to the admissibility of evidence is that every circumstance, however remote, that may tend to shed any light upon the issue in the case, is admissible. Murphy v. State, 36 Tex. Cr. R. 24, 35 S. W. 174, cited in State v. Jenkins, 134 La. 191, 63 South. 869; State v. Bradley, 6 La. Ann. 559; Wills on Circumstantial Evidence, 27.

In McLain on Criminal Law, vol. 1, par. 408, the rule is stated as follows:

"In order to make out a chain of circumstances, the prosecution may be allowed to give in evidence even minute and remote circumstances tending to connect the defendant with the crime. * * * Circumstances indicating a motive for the crime may be proved."

[2] As shown by bill of exceptions No. 1 a state witness was permitted to testify that eight months previous to the killing the accused had asked witness, a colored section foreman, to lend accused his pass so that he could go to Shreveport, La., to see Ida, wife of deceased.

As stated in bill of exceptions No. 2, a state witness testified that six months before the killing accused had told her that "he

would have Ida, the wife of the deceased, if he had to kill Ed., her husband."

The testimony of these witnesses was objected to by counsel for defendant · on the ground that the time was too remote, and that, in the absence of any evidence to show any intimacy between the wife of the deceased and the defendant, such testimony was inadmissible to show motive, and also inadmissible to show malice, since the evidence in the case showed that, at the time of the killing, the deceased and the defendant were apparently on friendly terms.

Under the authorities cited above, the testimony adduced tended to connect the defendant with the homicide, and to show a motive for the killing, and the remoteness as to time of these statements or conversations with the accused was not a sufficient ground for their exclusion.

[3-6] It appears from bill of exception No. 3 that the state witness detailed a conversation between himself and the defendant on Saturday, two days previous to the killing. The witness testified that on that occasion the defendant passed by his house in Pineville, and in a conversation told him that he had heard that witness had some trouble with the son of a doctor, and that accused asked witness why he ran away, instead of killing the white son of a ———, and that accused then stated:

"I am going to knock one over in a few days, but there won't be anything to it."

This testimony was objected to on the grounds that it was not relevant to the issue; that it had nothing to do with the killing, and constituted no threat against the deceased, and was only offered to prejudice the jury against accused, a negro, because of the race problem.

The trial judge in his per curiam to this bill states that he admitted this testimony because this was a case of circumstantial evidence, and the testimony tended to prove that the accused had threatened to kill, or intimated that he was going to do some killing himself in a few days. The judge a quo further states in his per curiam:

"The question of race prejudice was not mentioned in the case, *there was no objection on that ground*, and, in the opinion of the court, there was no effort to prejudice on account of race prejudice. The court considered the evidence, under all the circumstances, admissible, and accordingly admitted it." (Italics ours.)

We are not called upon by this bill of exceptions to review any appeal to race prejudice made in the argument of the district attorney to the jury. And, if we were, we would be confronted with the statement of the trial judge, which we would be compelled to accept as true, that "the question of race prejudice was not mentioned in the case." As "there was no objection on that ground," to quote the language of the per curiam, we cannot review here for the first time such objection to the admissibility of this testimony. The bill of exception does not therefore present to us for review the question of the admissibility of this testimony on the ground of race prejudice, as no such objection was urged to its admissibility in the lower court.

We agree with the trial judge that this testimony was relevant and admissible under the circumstances.

The language used by the accused cannot be restricted, in our opinion, to threats against the white race as a class. It must be interpreted in the light of all the circumstances of the case, in order to ascertain if the deceased came within the scope and meaning of the threat uttered, though it did not refer to him by name, and although the threat is couched in language of a general character. Wharton (3d Ed.) p. 938. This being a case depending wholly on circumstantial evidence, and there being in evidence before the court the testimony of another state witness as to direct and previous threats

made by the accused against the life of the deceased, and the homicide having been committed within two days after the last threat made by the accused "to knock one over in a few days," the trial judge properly admitted the testimony as to this last threat before the jury, in order that they might weigh and consider the same in connection with all the other facts and circumstances in the case.

Bill of exceptions No. 4 was reserved to the overruling of a motion to quash and set aside the venire drawn for the week in which the accused was tried. The motion charges that the jury commission illegally selected the jurors to try defendant from the qualified electors of Rapides parish, instead of from the qualified jurors of said parish, in violation of the provisions of Act 135 of 1898, and, at the same time, attacks said act as unconstitutional, null and void, as being in direct contravention of section 41 of article 7 of the Constitution of 1921.

The motion to quash was timely filed, having been tried and overruled before the jury was impaneled and sworn.

[7-9] It is true that Act 135 of 1898 does not require a juror to be a qualified elector. State v. Willie et al., 130 La. 454, 58 South. 147.

Yet, if the jury commission selects the names of only qualified electors from which to draw grand and petit jurors for a term of court, this is not sufficient cause to challenge the general venire, or any portion thereof, selected for any session of the court, because some of the jurors on the list are not qualified to act, nor because of any other effect or irregularity in the manner of selecting the jury, if it shall not appear that some fraud has been practiced or some great wrong committed in the selection and summoning of the jury that would work irreparable injury. Act 135 of 1898, § 15; State v. Claxton et al., 129 La. 591, 56 South. 519; State v. Sturgeon, 127 La. 459, 53 South. 703;

State v. Sheppard, 115 La. 942, 40 South. 363; State v. Batson, 108 La. 486, 32 South. 478.

Defendant does not allege fraud or injury in the selection or summoning of the grand jury that returned the indictment against him, nor in the selection or summoning of the petit jury that tried and convicted him. He does not even complain in this motion that these jurors are disqualified in any way for jury service, but asserts that the jury commission by selecting jurors from the qualified electors have prescribed an additional qualification for jurors not contemplated by law, and have limited the body of citizenship from which jurors are to be selected.

This contention of defendant is not well founded. The jury commission necessarily must have some source of information from which to derive the names and places of residence of the citizens in each parish to be selected and summoned for jury duty. Jurors are required by law to be citizens of the United States and of this state, and to be bona fide residents of the parish in and for which court is holden for one year next preceding such service, not under interdiction, or charged with any crime or offense punishable by hard labor, unless pardoned, and to be competent and intelligent persons of full age, having capacity to serve and to try and determine, both civil and criminal cases. Act 135 of 1898, § 1.

The registration lists of any parish are a reasonably accurate guide as to the qualifications of jurors as to citizenship and residence, as well as to the intelligence of the juror, as an elector is required by law to be a resident of the state for two years, and of the parish for one year, and to possess sufficient education to fill out his application to be registered as a voter. Article 8, § 1, Const. 1921.

A city directory, or any other source of in-

formation, might be used to aid and assist a jury commission in obtaining the names of citizens eligible for jury duty. The law does not prescribe the source from which jury commissioners shall derive their information in selecting and summoning citizens for jury service, nor does any statute of this state confer upon this court the right to dictate to a jury commission as to any particular method of investigation in the selection and summoning of grand and petit jurors. The limitation placed by law upon the acts of a jury commission, in the selection and summoning of jurors is that no fraud shall be committed or irreparable injury done; and, as long as an honest effort is made by a jury commission to comply with the law in obtaining competent and impartial jurors, this court will not intervene to tie the hands of that body and to limit it to any particular channel in its inquiry as to the names, places of residence, and legal qualifications of citizens selected for jury service. The organic law guarantees to the citizen the right to a speedy public trial by a fair and impartial jury. Such right does not include the prerogative of dictating to a jury commission as to the method of inquiry to be pursued in order to ascertain the qualifications of jurors.

[10] As the brief filed by counsel for defendant does not discuss the contention made in the motion to quash the venire that Act 135 of 1898 is in conflict with section 41 of article 7 of the Constitution of 1921, we presume that this point has been abandoned.

A motion in arrest of judgment was also filed, based on the ground that a member of the grand jury that returned the indictment against the accused was not qualified to serve, as he was under indictment for the violation of a police jury ordinance, making it an offense to pass a school bus and on the further ground that six members of the petit jury that tried and convicted the accused were illegally drawn, as said jurors were selected by the jury commission of Rapides parish from the qualified electors, instead of the qualified jurors, as required by law.

We have already passed upon the second ground of the motion in arrest of judgment in disposing of the motion to quash the venire.

[11] The first ground of the motion in arrest is not tenable, for the reason that such motion must be based upon defects patent upon the face of the record, which fails to disclose any indictment against the grand juror Albert Hunter, as alleged in said motion. A defect which appears only by the aid of testimony cannot be the subject of a motion in arrest of judgment. State v. Kline, 109 La. 603, 33 South. 618; State v. Shepherd, 123 La. 581, 49 South. 201; State v. Ryan, 122 La. 1095, 48 South. 537; State v. Moore, 119 La. 569, 44 South. 299.

[12, 13] Whenever an accused urges the disqualification of a grand juror for the first time after conviction, he is precluded from availing himself of such disqualification, in the absence of averment and proof that he only knew of the disqualification after conviction, and even then it must be set up in a motion for a new trial, and not in arrest. Marr's Crim. Juris. § 303. The motion in this case is deficient as to such averment, and the record is barren of proof of any indictment pending against any of the grand jurors. The motion was properly overruled.

[14] The fifth bill of exceptions was reserved to certain remarks made to the jury by the district attorney in his closing argument.

The language used by the prosecuting officer, as stated in the per curiam to this bill, was substantially as follows:

"If you, gentlemen of the jury, do not convict this accused in this case, then, I, as your district attorney, just as well go before your grand jury and tell them not to find any more indictments for murder on circumstantial evidence."

Counsel for defendant objected to these remarks of the state's attorney and reserved a bill of exceptions. He made no request of the trial judge to instruct the jury to disregard the statement of the district attorney. The trial judge took no action at the time, but charged the jury fully as to the law applicable to the case, and states that he did not consider the remarks, as made, as being in any wise prejudicial to the defendant. The trial judge approves the statement made by the district attorney as to the circumstances under which he used the language complained of by counsel for defendant. We gather from the statement of the district attorney appearing on page 40 of the transcript that counsel for accused had argued to the jury that they could not under the law convict on circumstantial evidence, regardless of how strong such evidence might be. The district attorney, in reply to this argument, reviewed the evidence in the case, insisted that there was no other reasonable hypothesis that any other party had committed the crime, and that there was no reasonable doubt as to the guilt of the accused. He denied the correctness of the statement as to the law of the case made by counsel for defendant, and read from a decision of this court to support the view of the state's attorney as to the law applicable to the case. To quote the language of the prosecuting officer, as it appears in his statement:

"He then stated that, if it was illegal to convict on circumstantial evidence, regardless of how strong it might be, and the case at bar was one of very strong circumstantial evidence, that it might as well be made known in order that future grand juries might be instructed not to return indictments based on circumstantial evidence, or words to that effect."

We agree with the district attorney that, prosecutions for capital offenses upon circumstantial evidence alone would be a useless waste of the time of the court, as well as of the time of the grand jury in investigating such cases, and a needless expense to the taxpayers, if it were the law that in such cases no conviction could be had regardless of the strength of the evidence presented to the petit jury. This is a self-evident proposition, stated by the district attorney in reply to the argument made by counsel for defendant on the law of the case, and is in the nature of a reductio ad absurdum. We concur with the trial judge that, under the circumstances of the case, the remarks of the district attorney cannot be considered as prejudicial to the accused. The court charged the jury fully as to the law of the case, and their verdict is presumed to be responsive to the law and the evidence.

The conviction and sentence appealed from are therefore affirmed.

O'NIELL, C. J., dissents.