467 So.2d 1151 (1985)
STATE of Louisiana, Appellee,
v.
Allen BROWN, Appellant.
No. 16,658-KA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1985.
*1153 Small, Williamson, Brocato & Fournet by J. Michael Small, M. Michele Fournet, Alexandria, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Johnny Carl Parkerson, Dist. Atty., West Monroe, Allen Harvey, Asst. Dist. Atty., Bastrop, for appellee.
Before MARVIN and SEXTON, JJ., and PRICE, J. Pro Tem.
SEXTON, Judge.
After trial by jury in the Fourth Judicial District Court for the Parish of Morehouse, defendant, a deputy sheriff in Morehouse Parish, was convicted of attempted injuring of public records, in violation of LSA-R.S. 14:132 and LSA-R.S. 14:27. For this offense, the court sentenced the defendant to seven months imprisonment without hard labor and ordered him to pay a fine of eighteen hundred dollars plus costs of court, or six months in jail in default of payment. Execution of the jail term was suspended, and the defendant was placed on supervised probation for a period of three years. Defendant now appeals his conviction on the basis of forty-three assignments of error, some of which are abandoned. He has grouped those being pursued into four categories for the purposes of argument.

Facts
On April 11, 1981 Deputies Danny Shores and Bruce Thompson of the Morehouse Parish Sheriff's Department were called to investigate a traffic mishap on Louisiana Highway 133 in Morehouse Parish. When the deputies arrived at the scene, they discovered forty-five to fifty bales of cotton which had fallen from a tractor-trailer rig into a ditch along the roadway. The deputies called the Louisiana State Police to investigate the incident. State Trooper Nora Eppinette responded and she asked the deputies to locate the driver of the tractor who had left the scene to obtain assistance. The deputies located the driver and brought him back to the site of the mishap. After the driver of the tractor was interviewed by the trooper, the deputies took him back to where he had been located. As the deputies returned to the scene, they received another report about a reckless driver in another part of the parish. The deputies contacted Trooper Eppinette and arranged for her to investigate the report about the reckless driver while they secured the area around the cotton spill. As the deputies approached the cotton spill, they noticed a green Ford pickup truck pulling away from the scene. When the deputies reached the scene of the cotton spill, Deputy Thompson noticed that several tarpaulins that had covered the cotton on the tractor-trailer rig and which had been stacked along the roadside were missing. The deputies managed to stop the pickup truck within approximately a mile of the scene of the spill and the tarpaulins were found stacked in the truck bed.
The green truck was being driven by a man who had two passengers with him, another man and a small child. As the passengers in the pickup truck exited, the officers advised them of their Miranda rights. The officers requested that the occupants of the green truck to accompany them back to the scene of the cotton spill. The occupants agreed, and the deputies followed the green truck back to the scene. By this time, the owner of the tractor-trailer rig had arrived in order to investigate the incident. The owner, Mr. William *1154 Browder, signed a blank affidavit designed to indicate that he wished to press charges in regard to the possible theft of the tarpaulins. The deputies made notes of the details of the incident and took photographs of the tarpaulins in the back of the pickup truck and of the two suspects. The deputies ascertained that the suspects were two brothers, Manzie and Mizell Reese. The Reeses were allowed to sign a property bond and were given a "court notice" at the scene. Subsequently, they were allowed to leave.
When the deputies arrived back at the sheriff's office, the deputies prepared a file concerning the incident and entered the Reese's name into the booking log which was maintained in the patrol room of the sheriff's department pursuant to LSA-C. Cr.P. Art. 228.
Around three o'clock on the afternoon of the incident, Deputy Shores talked to Sheriff Wandall Coody concerning the cotton spill and the Reese brothers situation. During this conversation, Deputy Shores indicated to the sheriff that considering that the father of the arrested men was a prominent farmer in the area, the "matter would probably be handled through paying a fine or through the district attorney's office."
On the morning after the incident, Sheriff Coody received a call from Mizell Reese. Because the sheriff was preparing to leave for church at the time, the conversation was brief and ended when the Sheriff indicated to Reese that he would check into the matter. Later in the afternoon, Mizell called the sheriff again. During this conversation, the circumstances surrounding the arrest of the Reeses were discussed in detail. Following the conversation, Sheriff Coody contacted the defendant, Deputy Sheriff Allen Brown, at his house. The sheriff directed the defendant to go to the office, pull the file regarding the Reese incident and report back to him. Thereafter, the sheriff concluded that the Reeses had been wrongfully arrested. The sheriff therefore ordered the defendant to remove the Reese's names from the arrest log or prisoner list. To accomplish this purpose, the deputy was ordered to remove the page in the arrest log and rewrite it, omitting the names of the Reeses. In so doing, he used several styles of handwriting and different colors of ink. The next morning, the sheriff contacted the Reeses and told them to disregard the "summons."
On August 25, 1981, Deputy Thompson and Deputy Shores were out riding in a patrol car when they noticed the Reese brothers pass them in another car. At this point, the deputies wondered what had happened to the prosecution of the Reese case. The deputies then searched for the file pertaining to the Reese case at the Sheriff Department. The file could not be located. The deputies further investigated and discovered that the Reese's names had been removed from the arrest log. The deputies advised Jim McDaniels, chief criminal deputy of the department. McDaniels also searched for the missing file. Deputy McDaniels then informed both Sheriff Coody and the district attorney's office of the missing file and the altered booking log. Eventually, the file containing the information gathered by the deputies relating to the arrest of the Reese brothers was seized pursuant to a court order. The file was found in the possession of the defendant at his house. At trial, a handwriting expert matched the defendant's handwriting to that contained on the altered page of the arrest book.

Argument No. 1

Release of Juror Sanders
Kathy Sanders was accepted and sworn to serve as a juror in the defendant's trial. Half an hour later, the juror was seen driving away from the Morehouse Parish Courthouse with Morehouse Parish Deputy Sheriff Harvey High. The state subsequently made a motion for mistrial contending that the juror had given a false statement during voir dire concerning whether or not she knew any of the sheriff's deputies. The court called a closed hearing to take testimony about the allegations of impropriety. Initially, the court *1155 interrogated Ms. Sanders. The juror testified that she knew Harvey High, but she did not know that he was still a deputy. The juror also knew Mr. High's daughter during high school. Deputy High offered to give her a ride home after she was accepted because her car was inoperative. The juror further testified that there was no discussion concerning the case during the ride home with the deputy. She indicated that her contact with Deputy High would not have any bearing on her consideration of the case.
After the juror was questioned by the court, the district attorney insisted on interrogating the juror even though he was cautioned that if he should subsequently prejudice the juror he could not be heard to complain. Afterwards, Deputy High testified at the hearing and substantially corroborated the story of the juror.
The next day, the juror reported to the court that the questioning of the district attorney had caused her to become so biased against the state that she could not act as an impartial juror. When this information was disclosed to the district attorney, he attempted to remove the juror for cause. The trial court denied the state's challenge. The state subsequently applied to this court for a writ of review concerning the ruling of the trial judge. This court granted the state's writ and ordered the juror removed and replaced with an alternate. Defendant now seeks to have this court re-examine its position on the state's writ application in this appeal.
The defendant's argument on these assignments of error is without merit. The defendant's complaints are adequately answered in State v. Marshall, 410 So.2d 1116 (La.1982). In Marshall, a sworn juror was heard to say in the hallway that "she was the only black on the jury and that she was going to hold everything up." The state filed a motion to challenge the juror for cause on the ground of lack of impartiality. After a hearing, the trial judge sustained the challenge for cause and replaced the juror with an alternate. The defendant subsequently applied for a writ of certiorari from the Louisiana Supreme Court to challenge the ruling of the trial judge. The Supreme Court granted the writ, but after consideration recalled it and upheld the judgment of the trial court. The Supreme Court agreed that the juror was not impartial and that the proper procedure was replacement with an alternate.
In this case, the fact of the juror's acquaintance with Deputy High was not made known to the state until after the juror had been accepted. The juror admitted to the court that she could no longer be impartial as a juror in this case. Thus, as we determined on the state's writ application, it was appropriate that the juror be excused and be replaced with the alternate.
The defendant's argument that the state should not be allowed to create the grounds for a challenge for cause by its own actions in interrogating a witness who has possibly engaged in some improper contact is worth noting. However, under the circumstances, the state certainly had a sufficient basis to suspect impropriety on the part of the juror. This is not a case where the state has made a frivolous allegation of impropriety and requested a hearing. Also, the state's interrogation of the juror during the hearing cannot be characterized as "aggressive" or as "unwise and unnecessary." A reading of the record reveals that the state's interrogation of the juror was searching, but reasonable under the circumstances. Thus, there is no evidence that the state attempted to incite the juror to prejudice. The assignments under this argument lack merit.

Argument No. 2

Admission into Evidence of Convictions of Reese Brothers
In this argument, appellant claims that the trial court erred in its admission of minute entries showing the convictions of the Reese brothers. The appellant argues that the fact that the Reese brothers were convicted of misdemeanor theft is not relevant to a material issue at his trial. Brown claims that even if the evidence was admissible, its prejudicial effect and other counterbalancing *1156 considerations far outweigh its marginal relevance. Furthermore, he urges that introduction of the evidence violated his sixth amendment right to confrontation.
To be admissible, evidence must be relevant to the material issue. LSA-R.S. 15:435. Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent. Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible. LSA-R.S. 15:441.
Generally, an appellate court places great weight on a trial court's ruling on the relevancy of evidence. The trial court should not be reversed unless a clear abuse of discretion has occurred. State v. Kahey, 436 So.2d 475 (La.1983). Error in determining the issue is not fatal unless the defendant demonstrates prejudice. State v. Humphrey, 412 So.2d 507 (La. 1982); State v. Johnson, 343 So.2d 155 (La.1977). In State v. Humphrey, supra, the Supreme Court explained:
It is the trial judge's responsibility to determine admissibility related to issues of relevancy, to issues of collateral impeachment, and to issues of remote circumstances that may tend to shed light upon the ultimate issue (reasonable hypothesis of innocence) in a circumstantial evidence case. See LRS 15:441, 492, 494; State v. Martin, 310 So.2d 544 (La.1975); State v. Cappo, 345 So.2d 443 (La.1977); State v. Jackson, 153 La. 517, 96 So. 53 (1923). The trial judge necessarily has some discretion in these areas and if error is committed and this court finds, beyond a reasonable doubt, that the error was harmless error in light of the total circumstances, the defendant's conviction will not be overturned. See State v. Gibson, 391 So.2d 421 (La.1980); State v. Spell, 399 So.2d 551 (La.1981).
In defense counsel's opening statement, he frequently directly referred to or insinuated that the evidence against the Reese brothers was weak. The evidence of their convictions tended to refute this issue which had been interjected into the trial by the defense. Additionally, it may have shed some light on the offender's state of mind.
However, from the retrospective viewpoint of this court, it appears that the evidence of the Reese brothers' conviction is arguably not pertinent to the specific material issue in this case, i.e., whether or not the defendant intentionally altered the booking log. In other words, the basis of appellant's position here is that an issue brought into the case originally by appellantthe strength of the case against the Reese brothersis not relevant. Appellant is not entitled to "have it both ways." The issue was interjected by the defendant very early in the trial and we cannot say from this viewpoint that the trial court clearly abused its discretion in allowing introduction of this evidence contradicting a position taken by the defense. Moreover, appellant has demonstrated no prejudice which occurred as a result of the admission of this evidence. The assignments under this argument lack merit.

Argument No. 3

Evidence of Pending Charges Against Sheriff Coody
In this group of assignments of error, the defendant argues that the prosecution should not have been allowed to question the defense witness, Sheriff Coody, about pending charges against him stemming from the same series of events. The defendant's position is without merit.
LSA-R.S. 15:492 and 15:495 are concerned with the impeachment of witnesses:
§ 492. Bias, interest, or corruption of witness; questions concerning particular acts
When the purpose is to show that in the special case on trial the witness is biased, has an interest, or has been corrupted, it is competent to question him as to any particular fact showing or tending to show such bias, interest or corruption, and unless he distinctly admit such fact, *1157 any other witnesses may be examined to establish the same.
§ 495. Impeachment by evidence of conviction; condition precedent to proof by others; prohibition against cross-examination as to indictment or arrest
Evidence of conviction of crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness, but before evidence of such former conviction can be adduced from any other source than the witness whose credibility is to be impeached, he must have been questioned on cross-examination as to such conviction, and have failed distinctly to admit the same; and no witness, whether he be defendant or not, can be asked on cross-examination whether or not he has ever been indicted or arrested, and can only be questioned as to conviction, and as provided herein.
Although LSA-R.S. 15:495 prohibits impeachment of a witness on the basis of a prior arrest or indictment, LSA-R.S. 15:492 supercedes Section 495 if the evidence of the arrest is relevant to show a potential for bias or interest as a result of that arrest. State v. Brady, 381 So.2d 819 (La.1980); State v. Roberson, 448 So.2d 789 (La.App. 2d Cir.1984). Thus, if the fact of a previous arrest is independently relevant under LSA-R.S. 15:492 to show particular bias in the case before the court, that circumstance takes precedence over LSA-R.S. 15:495. That the defense witness, the sheriff, had charges pending from the same incident is a fact tending to indicate potential for bias or interest in the instant case, and it is for the trier of fact to determine the weight to place upon the evidence rendered by that witness. This assignment lacks merit.

Argument No. 4

Sufficiency of Evidence
Here appellant argues that the trial court erred in overruling his motion for a post judgment verdict of acquittal, alleging that the state had failed to adduce sufficient evidence to convict him of the charged offense.
LSA-C.Cr.P. Art. 821B codifies the Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard for testing sufficiency of evidence for purposes of the motion for post verdict judgment of acquittal. Therefore, in deciding whether to vacate a conviction under this provision, the court must decide whether the evidence, viewed in the light most favorable to the prosecution, does not reasonably permit a finding of guilty. Specifically, appellant argues that the state failed to prove that the record was filed or deposited "by authority of law" within the meaning of LSA-R.S. 14:132, and that the state failed to prove the specific intent to commit the crime as required by LSA-R.S. 14:27.
The crime of injuring public records is defined by LSA-R.S. 14:132, which provides:
§ 132. Injuring public records
Injuring public records is the intentional removal, mutilation, destruction, alteration, falsification, or concealment of any record, document, or other thing, filed or deposited, by authority of law, in any public office or with any public officer.
Whoever commits the crime of injuring public records shall be imprisoned for not more than five years with or without hard labor or shall be fined not more than five thousand dollars or both.
In support of his first point relative to the sufficiency of evidence argument, viz., that there was no proof that the filing of this record was confected by "authority of law," defendant cites State v. Gomez, 433 So.2d 230 (La.App. 1st Cir.1983), in which the defendant's conviction for injuring public records was overturned. In Gomez, the records at issue were the financial records of a school which the principal had secreted in his home in anticipation of an audit. The Supreme Court held that under the circumstances of that case, it was not shown that the records had not been filed "by authority of law." The court reviewed the various statutes with respect to a public officer's responsibility concerning the *1158 records of his office, but found that none of those laws mandated the filing of the records in the office of the principal. Thus, in Gomez there was no law mandating the filing of the records, nor was there evidence to show that the records had been filed or deposited by authority of law.
In the situation here presented, the booking entry was clearly filed "by authority of law." LSA-C.Cr.P. Art. 228 provides:
Art. 228. Booking of arrested person
It is the duty of every peace officer making an arrest, or having an arrested person in his custody, promptly to conduct the person arrested to the nearest jail or police station and cause him to be booked. A person is booked by an entry, in a book kept for that purpose, showing his name and address, the offense charged against him, by whom he was arrested, a list of any property taken from him, and the date and time of booking. Every jail and police station shall keep a book for the listing of the above information as to each prisoner received. The book shall always be open for public inspection. The person booked shall be imprisoned unless he is released on bail. [Emphasis ours]
Thus, every jail and police station is required by law to keep a record in the form of a book, of the names, addresses and offenses of all arrested persons, which book must remain open to public inspection. Through this article, the Legislature has provided a means by which the public is informed of the names of the persons who are detained in custody. Thus, the book is a bastion for the protection of the citizen against unjust arrest and sequestration by the sovereign. The book protects the citizen from his arrest until his 72-hour hearing. See LSA-C.Cr.P. Art. 230.1.
We therefore conclude that the booking entries in question were entered "by authority of law." This portion of defendant's assignment of error lacks merit.
In his second sufficiency claim, the defendant claims that the state failed to prove defendant's specific intent to "injure" public records within the meaning of the statute. He argues that since the officers who dealt with the Reese brothers did not strictly comply with the requirements of LSA-C.Cr.P. Art. 228 and since the evidence against the brothers was considered to be weak, the booking entry was erroneously made, thereby precluding the formation of specific intent to alter or injure this public record by the removal of the names of the Reese brothers.
Defendant asserts that the arresting officers had the option of issuing the Reese brothers a misdemeanor summons[1] rather than arresting them. If they had not been arrested, but merely cited by summons, LSA-C.Cr.P. Art. 228 does not require the entry of their names in the book. However, the record does not factually support defendant's position. Deputy Shores testified that had the Reese brothers not posted bond at the scene, they would have been transported to the jail. By allowing the Reese brothers to complete the necessary paperwork to post bond at the scene, the officers were merely accommodating these citizens, whom they knew to be from the local area.
The record shows that it was standard procedure for the Morehouse Parish Sheriff's Department to have a complainant sign a blank affidavit requesting the arrest and prosecution of criminal suspects. The affidavits were then sent to the district attorney's office where they were properly filled out. The record also shows that an offense or arrest report is typed out after *1159 every arrest and forwarded to the district attorney's office.
The Reese brothers were clearly restrained of their liberty in a significant way by these officers' actions, and as such, were under arrest. See State v. Hargrave, 411 So.2d 1058 (La.1982). Therefore, although the arresting officers had the option under LSA-C.Cr.P. Art. 211 to issue a summons instead of making an arrest, they had clearly elected to arrest these suspects.[2] As such, they were required by Article 228 to enter the names of the suspects into the booking log.
Article 228 mandates that an arrested person be promptly booked. Thus, the person arrested is protected by the booking because the arrest triggers several important safeguards for the protection of the accused. See LSA-C.Cr.P. Arts. 229-230.1 and 232. Thus, an important purpose served by the booking log is to protect persons arrested upon insufficient evidence against being secreted and held by arresting authorities without due process of law. Even if the case against the arrested party is weak and the arresting authority releases him, the book must remain inviolate. Therefore, irrespective of the strength of the state's case, the removal of their names from the booking log contravened LSA-R.S. 14:132.
We therefore determine that the record before us is sufficient for a rational trier of fact to have determined that the public record in this instance was deposited by authority of law, and that the defendant actively intended the consequences of his act, i.e., the obliteration of the fact of the Reese brothers' arrest. The strength of the state's case against the Reese brothers or the procedure followed in this case by the arresting officers is of no moment.
Having concluded that none of defendant's assignments of error are meritorious, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] At the time of the Reese brothers' arrest, LSA-C.Cr.P. Art. 211 read:

Art. 211. Summons by officer instead of arrest
When it is lawful for a peace officer to arrest a person without a warrant for a misdemeanor, he may give a written summons instead of making an arrest, if he has reasonable ground to believe that the person will appear upon a summons. In any case in which a summons has been issued, a warrant of arrest may later be issued in its place.
By Act No. 180 of 1982, the article was amended to provide mandatory issuance of a misdemeanor summons instead of arrest when certain conditions enunciated in the article exist.
[2] The officers testified they were unaware of the option allowed by Art. 211. Parenthetically, we note that while the record indicates that the officers intended to arrest the Reese brothers for misdemeanor theft, it would appear that a tarpaulin large enough to cover a truck capable of carrying a number of bales of cotton would be worth more than $100, and thus the theft thereof would be a felony.