218 So.2d 585

**STATE of Louisiana**

**v.**

**Lee Wilton GILES.**

**No. 49195.**

Jan. 20, 1969.

Rehearing Denied Feb. 24, 1969.

Donald L. Beckner, Frank Foil, Baton Rouge, for defendant-appellant

Jack P. F. Gremillion, Atty.Gen., William P. Schuler, Asst.Atty.Gen., Sargent Pitcher, Jr., Dist.Atty., Davis A. Gueymard, Asst.Dist.Atty., for appellee.

SUMMERS, Justice.

A bill of information filed in East Baton Rouge Parish on May 25, 1966 charged that between January 1, 1965 and April 12, 1966 appellant Lee Wilton Giles committed a series of thefts of merchandise and cash valued at $7,700, the property of D. H. Holmes Co., Ltd. After a trial by jury, Giles was found guilty of the theft of property having a value of $2,492.17 and sentenced to be confined in the Louisiana State Penitentiary at hard labor for five years.

From January 1, 1965 through April 12, 1966 Giles was employed by D. H. Holmes Co., Ltd., in Baton Rouge, first as manager of the men's division of Holmes' Delmont Village store until January 1966, and then until sometime after April 12, 1966 as manager of the entire store. On April 12, 1966, after receiving an anonymous phone call informing on Giles, Frederick Stacey, the security superintendent for Holmes initiated an investigation into several purported purchases made by Giles, confronted him with those transactions and sought an explanation.

As a result, on April 23, 1966, officers from the East Baton Rouge Parish sheriff's office went to appellant's home—having been brought into the matter by Stacey —questioned Giles, and, after obtaining his permission, conducted a search of the premises where they discovered quantities of merchandise which they deduced had been stolen from Holmes' Delmont store. Two days later another search was conducted, an inventory was made with the help of employees of Holmes who were familiar with the Holmes merchandise, and color slides were taken of many of the items inventoried.

When the bill of information was filed charging theft of "merchandise and cash valued at $7,700.00, the property of D. H. Holmes Co., Ltd.", defense counsel filed a bill of particulars seeking, among other information, a list of the items of merchandise allegedly stolen. In answer, the prosecution furnished a detailed list of approximately 883 different items having an estimated aggregate value of $7,654.87, plus two television sets and two gas heaters, the value of which was not given.

Counsel for Giles, during the course of these proceedings in the trial court, reserved eight bills of exceptions upon which he relies to set aside the sentence and con-

viction on this appeal. Bills Nos. 3 and 4 are related and will be considered first.

■ On direct examination, counsel for the State asked Lt. Cecil Evans, detective of the East Baton Rouge Parish sheriff's office, to produce certain photographic color slides, made by him during the second visit to Giles' residence while the inventory was being taken. Defense counsel objected to the introduction of these slides because, he asserted, they were being offered to create a presumption that Giles was guilty of theft by showing him to be in possession of stolen property without first establishing that the property had been stolen. See La.R.S. 15:432. Defense counsel objected, moreover, that a proper foundation had not been laid to permit introduction of the photographic slides, for it had not then been shown, in keeping with the charge in the bill of information, that the merchandise in question, if stolen, had been stolen from Holmes.

The trial judge was of the opinion that the objection was premature. It was his view that the Court should not attempt to control the State's order of proof and also that the State must prove beyond a reasonable doubt that the defendant had stolen the property, or some of it, from D. H. Holmes Co., Ltd., in order to obtain a conviction; and that the State would therefore necessarily have to introduce evidence to that effect at some later stage of the trial. Bill No. 3 was reserved to this ruling.

■ As to the foundation for the introduction of the photographic slides, the trial judge observed in his per curiam that the witness Evans testified that he had a search warrant, and he was accompanied by two employees of the Holmes Company who were familiar with the merchandise handled by the store and pointed out this merchandise to him to be photographed. After identifying the slides, Evans testified that they truly depicted the property he saw in defendant's home at the time. A proper foundation was therefore established to connect the items depicted on the slides with the theft from Holmes, and the slides were, in addition, a corroboration of Evans' testimony.

■ The principle of admitting photographic evidence is but a corollary to that permitting the introduction of the physical object itself. As a general rule, this court has recognized that photographs are admissible in evidence when they are shown to have been accurately taken, to be a correct representation of the subject in controversy, and where they tend to shed light upon the transaction before the Court. State v. Johnson, 198 La. 195, 3 So.2d 556 (1941). Since the photographs in question fulfill these requirements, the trial judge properly permitted their introduction in evidence.

Counsel argued also that because the photographs contained representations of objects other than those allegedly stolen, the photographs were irrelevant as to the objects not stolen, and it was prejudicial to admit them. This contention is also answered in State v. Johnson, supra, where this court declared:

"Where they are otherwise properly admitted, it is not a valid objection to the admissibility of photographs that they tend to prejudice the jury. Competent and material evidence should not be excluded merely because it may have a tendency to cause an influence beyond the strict limits for which it is admissible."

■■ Applying the rule thus annunciated to the facts at bar, photographs of the stolen objects are not inadmissible simply because other objects are also depicted therein. Because of its character this evidence cannot be sorted, and it is incumbent upon the State to prove which, if any, of the objects thus depicted were stolen. Whether the proof is accomplished is a matter for the trier of facts to decide. These and other questions will invariably arise when photographic evidence is sought to be introduced, and for this reason the law has wisely relegated the determination of the proper use of photographs at the trial largely to the sound discretion of the trial judge, who can determine whether they serve a proper place in the jury's en-lightenment. Bill No. 3 is therefore without merit.

■ Bill of Exceptions No. 4 was reserved when the trial judge allowed the showing of the slides to the jury over defense objections. Inasmuch as we decided that the slides were properly introduced in evidence in our consideration of Bill No. 3, it was proper to permit the jury to view them like any other evidence, and Bill No. 4 is without merit.

Defense counsel next contends that the remaining bills of exceptions, taken collectively, demonstrate that the rulings of the trial judge were prejudicial to appellant's rights, and, therefore, his conviction should not stand. Each of the bills relied upon to produce the cumulative effect of prejudice are considered separately hereafter.

### Bill No. 1

■ On direct examination, while the Assistant District Attorney was questioning Robert Sulfstede, a state witness and former employee of Holmes, he asked the witness if he had purchased suits while employed at the Delmont store. Defense counsel objected to the relevancy of this question, and, when his objection was overruled, he reserved Bill No. 1.

Reference to the evidence attached to the bill and the trial judge's per curiam makes the relevancy of this question quite obvious. Later questions elicited from this witness the fact that his purchases of suits

requiring alteration and his employment in the alteration department made him familiar with the procedure there. One of the requirements established in that department and enforced by him as department head made it clear that no clothes were to go to the alteration room without a sales ticket attached. On one occasion four sport coats and a suit were sent to the alteration department without the required sales ticket. Upon investigation it was learned that appellant Giles was responsible. This evidence had a direct bearing upon Giles' surreptitious activities and disclosed his efforts to purloin the four sport coats and the suit. The relevancy, then, of the question concerning the witness Sulfstede's purchase of suits cannot be questioned. The circumstances thus disclosed were material to the issue of the theft by Giles and important to a full disclosure of the pertinent facts which the jury should consider.

The rule defining relevant evidence is found in La.R.S. 15:441:

"Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent.

"Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible."

As we pointed out recently in State v. Stokes, 250 La. 277, 195 So.2d 267 (1967) when evidence is proffered and a dispute arises concerning its relevancy, the court should determine whether there is a logical or rational connection between the fact which is sought to be proved and the fact which is at issue in the case. See also 1 Jones on Evidence § 153 (1958). And there is a need in such cases to distinguish relevancy from the weight or probative value of the proffered evidence. The evidentiary fact offered does not need to have strong, full, superlative value, or to produce persuasion by its sole and intrinsic force, but it is sufficient if it is worth consideration by the jury. Wigmore on Evidence § 27, p. 231 (1923).

In such cases, where the State relies upon circumstantial evidence to sustain the prosecution, the rules relating to the admissibility of evidence are to some extent less rigidly applied. La.R.S. 15:438. This practice prevails in order that every circumstance, however remote, which may tend to shed light upon the issue in the case, may be heard by the trier of fact and entered into the record. State v. Stokes, supra, and State v. Jackson, 153 La. 517, 96 So. 53 (1923).

Under the rules thus established relating to the relevancy of evidence, the objection which is the basis for Bill No. 1 is not well taken, and the bill is without merit.

*Bill No. 2*

This bill of exceptions was reserved when the Court overruled defense

counsel's objection to the testimony of Lieutenant Cecil Evans of the sheriff's office, a state witness. Evans, accompanied by another officer from the sheriff's office, went to Giles' residence to arrest him. They were acting upon the authority of an arrest warrant charging him with the crime of theft. After being advised of his constitutional rights, Giles talked freely to the officers saying he had nothing to hide and denying any wrongdoing on his part. Both Giles and Frank Phillip Rockford, who occupied the house with him, gave their permission for the search.

When the witness Evans reached the point in his testimony relating to the large quantity of clothes found in the building and began to give the number and description of the various items, defense counsel objected because he felt the district attorney was attempting to have the witness list the merchandise to create a presumption that Giles was a thief because he was in possession of stolen goods although, according to defense counsel, it had not been established that the merchandise was in fact stolen.

The objection was ill-conceived because there was, in our view, ample evidence in the record to warrant a finding by the jury that the merchandise referred to had been stolen by appellant from D. H. Holmes Co., Ltd. The large quantity of clothes discovered, consisting of twenty suits with Holmes labels, sixteen sport coats with the Holmes label, over twenty-five pairs of shoes, approximately eighteen belts, one hundred and fifteen pairs of socks, dozens and dozens of nylon undershirts and underpants, some of which were still in the original packages and contained the Holmes labels, and many other items from Holmes found in the residence of Giles, a store manager with a modest salary, all indicate most emphatically the strong probability of theft, and point up the relevancy of the question and the lack of foundation for the objection forming the basis for this bill.

*Bill No. 5*

This bill was reserved while Giles was testifying on his own behalf on direct examination. Defense counsel, in an attempt to refute the prior testimony of the security officer Stacey, to the effect that certain suits found in appellant's residence were obtainable through the Holmes-Delmont store, asked appellant these questions:

"Q. How about the Griffon suit?

A. Griffon suit is carried at Bon Marche, or used to be. I believe it since has been discontinued, but I did buy that at Bon Marche.

Q. Was that suit ever carried at Delmont Village?

A. Not to my knowledge. It was never carried there after I went there.

Q. Did you hear Mr. Stacey say that it was?

A. Yes, sir, I remember his—"

Whereupon the State's attorney objected that the question was improper because Stacey never said that the items of merchandise were carried at the Delmont Store, but testified they were "obtainable" through that store by drawing on the stock of other Holmes stores. The trial judge sustained the objection and instructed defense counsel that it was improper to ask the witness "if he heard a state witness testify" in a certain manner because the jury had heard the witness and could decide what was said. Instead, the judge instructed counsel to put the question in the subjunctive: "The proper way to put it is if Mr. Stacey said a certain thing do you agree with that statement." Following these instructions, defense counsel by putting the question in the subjunctive was able to elicit from appellant the full refutation of Stacey's testimony. Under these circumstances, no prejudice resulted to appellant regardless of the correctness of the Court's ruling.

### Bill No. 6

During the trial, while the jury was retired, the district attorney sought a ruling from the court on the legality of a hypothetical question he proposed to ask appellant Giles on cross-examination. The question concerned a transaction in which appellant Giles was supposed to have acquired a television set for Mrs. Ragley, an

employee of the store, under a cost-plus-ten-percent discount privilege to which Giles was entitled by virtue of his position. Because Mrs. Ragley was not entitled to the same privilege, but was merely entitled to a deduction of ten percent from the retail price, the question arose as to how Giles made the computation—on the cost-plus-ten-percent basis or by deducting ten percent from the retail price—and whether the charge made to Mrs. Ragley was remitted to the store or was retained by Giles. Thus the district attorney proposed to ask Giles, who had just testified that he based the charge for the television set sold to Mrs. Ragley on a ten percent discount on the regular sale price, what the discount price would be on a cost-plus-ten-percent basis if he assumed that the cost was $126.95.

Counsel for defendant objected to the question because it was irrelevant and hypothetical and because there was no evidence in the record to support the assumption that $126.95 was the correct cost data.

On the basis of appellant Giles' long experience in the store and his thorough knowledge as manager of the charge procedure, the trial judge was of the opinion that the hypothetical question was proper, even though the evidence did not at that time establish that $126.95 was the cost of the television set. The Court pointed out that the District Attorney intended to establish that $126.95 was the correct cost by other evidence later in the trial and that

unless this was done the evidence obtained by the hypothetical question would have little probative value.

According to the trial judge, this order of proof was also warranted as rebuttal evidence to the testimony of the accused Giles. Giles had denied that he knew the correct cost of the television set. As the accused he was not compelled to testify, and his testimony could not, therefore, have been anticipated by the District Attorney. Moreover, the judge felt the District Attorney could not recall the accused to the witness stand after the cost data had been established by other witnesses, therefore, it was important to test Giles' knowledge while he was on the stand. After the judge's ruling, the jury was returned to the courtroom and the question was propounded to the witness.

The ruling is correct. The prolonged training and experience of appellant Giles as an employee of D. H. Holmes Co., Ltd. since 1961 gave him a special knowledge of the charge back or discount privilege and how they should be computed. He could be asked a hypothetical question to test his knowledge of the correct method of making the calculations. La.R.S. 15:464. Furthermore, it was permissible to assume the data upon which the hypothetical question was based because when Giles denied that he knew the cost figure, it was necessary to assume a figure in order that he might be required to demonstrate his knowledge and skill in making the calculation. Subsequent testimony established that $126.95 was the correct cost of the television set making it amply clear that the jury was not misled by the assumption. 2 Wigmore on Evidence § 678 et seq. (1940).

*Bill No. 7*

▬ This bill was reserved when the trial judge overruled defense counsel's objection to a question propounded by the assistant district attorney to the accused on recross-examination, on the ground that the recross-examination exceeded the scope of the redirect examination. Such an objection is without merit, for when the accused takes the stand he may be cross-examined upon the whole case. La.R.S. 15:462.

▬ It is our opinion therefore that Bills Nos. 1, 2, 5, 6, 7 have no merit, either individually or cumulatively. Although the ruling of the trial judge may have been prejudicial to Giles in that it may be said that his conviction resulted in part from the evidence introduced as a result of those rulings, we cannot agree that he was thereby deprived of any legal rights. The rulings are supported by the law and properly within the authority of the trial judge. It is not sufficient that an accused be prejudiced by a ruling of the court to obtain a reversal, for all evidence that convicts prejudices; the prejudice must result from an illegal ruling.

Bill of Exceptions No. 8 was reserved to the denial of a motion for a new trial based upon the bills of exceptions which we have found to be without merit. This final bill, therefore, is likewise without merit.

For the reasons assigned, the conviction and sentence are affirmed.

FOURNET, C. J., concurs in the result.