290 So.2d 322 (1974)
STATE of Louisiana
v.
Willie Louis BROWNING.
No. 53963.
Supreme Court of Louisiana.
February 18, 1974.
*324 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Charles A. Marvin, Dist. Atty., James S. Harris, Asst. Dist. Atty., for plaintiff-appellee.
Graydon K. Kitchens, Jr., John W. Montgomery, Minden, for defendant-appellant.
SANDERS, Chief Justice.
Defendant, William Louis Browning, was charged with murder. After trial by jury, he was convicted of manslaughter and sentenced to 12 years imprisonment at hard labor. During the course of his trial, defendant reserved 16 bills of exceptions, which he relies upon for reversal of his conviction. Bills of Exceptions Nos. 4, 8 and 11 were neither argued nor briefed by defendant and are, therefore, deemed abandoned. See State v. Edwards, 261 La. 1014, 261 So.2d 649 (1972).
The State's theory of the case was that Browning had an argument with one Corrine Williams, after which he set fire to her house. In the fire, Sharon Williams, a three-year-old child, was asphyxiated. The defense was alibi, that is, that the defendant was at his own residence when the crime occurred.

BILL OF EXCEPTIONS NO. 1
Prior to trial, defendant filed a motion for a bill of particulars, containing nineteen requests for information. The State answered nine of the requests, supplying information about the crime, including the time of the offense, place of occurrence, date and cause of the victim's death, and the statutory bases for the prosecution.
The State had previously supplied defense counsel a copy of the defendant's statement.
Requests No. 10 through 17 inquired in detail concerning the State's evidence, such as the motive for the crime, whether there were eye witnesses and if so their names, and the nature of any physical evidence to be offered. Finally in request No. 18, the defense asked if the State had in its file any evidence that would tend to prove the innocence of defendant and, if so, its nature, and the names of the witnesses.
The defendant asserts in this Court that the trial judge erred in declining to order the State to supply all of this information.
It is well established that the defendant is not entitled to the pretrial discovery of the details of the State's evidence. State v. Square, 257 La. 743, 244 So.2d 200 (1971); State v. Wright, 254 La. 521, 225 So.2d 201 (1969); State v. Hunter, 250 La. 295, 195 So.2d 273 (1967).
Quite clearly, requests Nos. 10 through 17 are designed to force the State to disclose the details of its evidence prior to trial. Hence, the ruling of the trial judge as to them was correct.
In this Court, the defendant strongly reurges request No. 18, in which he sought the disclosure of evidence tending "to prove the innocence of the defendant." He relies upon the decision of the United States Supreme Court in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
In answer to this request, the State responded:
"With respect to `evidence that would tend to prove the innocence of the defendant', as inquired about in Article 18 of the Motion for a Bill of Particulars, the State shows that it has not attempted and shall not attempt to suppress any evidence favorable to the accused which it could legally reveal so as to deny constitutional due process to the accused.

*325 The State further answers that the defendant and his counsel have been furnished with the names of witnesses regarding the crime charged on October 17, 1972, and that the defendant is not otherwise entitled to the details of the evidence upon which the State will rely for a conviction."
In our opinion, the response is more than adequate. Brady v. Maryland, supra, dealt with the prosecution's suppression of a confession in which a companion of the petitioner admitted the actual homicide.
Recently, in State v. Gray, La., 286 So. 2d 644 (1973), in applying that decision, we stated:
"Significant in that case, we think, is the suppression of the confession after request, its favorable content for the defense, and its materiality to the issue of punishment to be fixed by the jury in the capital case. Thus, the withholding of the confession rose to a constitutional dimension."
In Moore v. Illinois, 408 U.S. 786, 92 S. Ct. 2562, 33 L.Ed.2d 706 (1972), the United States Supreme Court stated:
"The heart of the holding in Brady is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or to punishment."
In the present case, we find no adequate showing of the suppression of evidence tending to prove the defendant's innocence.
We conclude that Bill of Exceptions No. 1 lacks merit.

BILL OF EXCEPTIONS NO. 2
Defendant reserved this bill when the trial court denied a motion to suppress a statement given by the defendant which he alleges was the product of coercion. Defendant also alleges, as he did at the time of the motion to suppress, that any evidence obtained as a result of the statement should also be suppressed as "fruit of the poisonous tree."
The statement which defendant seeks to have suppressed was not offered into evidence during his trial. Furthermore, there is no showing that any evidence offered at trial was obtained as a result of the statement. Hence, the defendant has suffered no prejudice from the ruling of the trial judge.
Bill of Exceptions No. 2 is without merit.

BILL OF EXCEPTIONS NO. 3
Defendant reserved Bill of Exceptions No. 3 to the denial of his motion for a mistrial, based upon several statements of the prosecutor during his opening statement. First, defendant objects to the following statement by the prosecutor:
". . . To establish this element of intent the State shall use the actions and words of the defendant occurring prior to and after the actual time of the crime charged and we shall also use these things to establish motive for the crime.. . ."
Defendant argues that the above statement violates the provisions of Article 767 of the Louisiana Code of Criminal Procedure which provides: "The state shall not, in the opening statement, advert in any way to a confession or inculpatory statement made by the defendant."
The quoted remark does no violence to Article 767. It makes no reference to a confession or inculpatory statement. Rather, it refers to the "acts, conduct or declarations" probative of intent under LSA-R.S. 15:446. That statute provides:
"When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence *326 is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged."
In our opinion, the statement did no more than "set forth, in general terms, the nature of the evidence." See LSA-C.Cr.P. Art. 766.
Defendant also urges that another remark made by the prosecutor in the presence of the jury violated Article 767, was prejudicial to him, and required a mistrial. In his opening statement, the prosecutor requested that the record reflect that the notice required by Article 768 of the Louisiana Code of Criminal Procedure had been given to the defendant.[1] Defendant asserts that this was a prohibited reference to a confession or inculpatory statement made by the defendant. First, we note that defendant did not timely object to the statement as required by Article 841 of the Louisiana Code of Criminal Procedure. Second, the prosecutor's statement was simply that the notice required had been given. As the State submits, this remark would not convey to the jury notice that defendant had made a confession or inculpatory statement.

Bill of Exceptions No. 3 is without merit.

BILLS OF EXCEPTIONS NOS. 5, 6, and 7
These bills of exceptions, grouped under one specification of error, deal with defendant's objections to the admission in evidence of photographs of the interior and exterior of the burned house. Defendant objected to photographs numbers 1 through 5, showing the exterior of the house, on the ground that the witness identifying the photographs did not take them. He objected to the remainder of the photographs on the ground that the witness identifying them did not testify with certainty that the scenes depicted were exactly as they appeared on the day of the fire.
The witness identifying the photographs was the owner of the house, who had leased the premises to the victim's mother. He testified that the photographs depicting both the interior and exterior of the house were accurate. The owner testified that the interior views accurately showed what he had seen when he entered the house the day after the fire. He testified, during cross-examination, that he did not enter the house the day of the fire because it was too hot, but that he had been able to see part of the interior from the outside on the day of the fire.
The photographs of the exterior are clearly admissible. It is not necessary for the photographer who took the pictures to verify them. State v. Fox, 251 La. 464, 205 So.2d 42 (1967). The witness identifying them was present the day of the fire and testified that the photographs accurately depicted what he saw that day, thus the State laid a proper foundation for the introduction of the photographs.
The photographs of the interior are also admissible. The owner testified that the photographs accurately depicted the house as he saw it the day of and the day after the fire. Also, he testified that the photographs of the interior were accurate depictions of what he had seen from the outside on the day of the fire. He was able to identify that part of the house which each photograph depicted. The evidence shows that the photographs were correct representations of the subject and tended to shed light on the criminal transaction. They were, therefore, relevant and admissible. LSA-R.S. 15:435; State v. Giles, 253 La. 533, 218 So.2d 585 (1969). Defendant's argument that the witness was unable to testify that nothing in the house *327 had been changed goes to the weight to be given to the evidence, not to its admissibility.
Bills of Exceptions Nos. 5, 6, and 7 are without merit.

BILLS OF EXCEPTIONS NOS. 9, 10, 12, 13, and 14
These bills of exceptions were reserved by defendant when the trial court allowed the testimony of five witnesses, who had not been present in the courtroom when the court ordered sequestration of the witnesses. Defendant based his objection on the fact that these witnesses had not been placed under the rule.
As each witness took the stand, the State inquired as to whether he had been in the courtroom when any other witness was testifying and whether he had discussed the case with any other witness.
Four of the five witnesses stated that they had neither been present nor had they discussed the case with any other witness. As to these four witnesses, the court correctly permitted them to testify. The purpose of sequestration is to insure that the witness will testify from his own knowledge without being influenced by the testimony of other witnesses. State v. McAllister, 253 La. 382, 218 So.2d 305 (1969). These four witnesses fulfilled the purpose of the rule. The trial judge did not abuse his discretion in allowing them to testify.
The fifth witness, Joe Powell, testified that he had discussed with the deputy fire marshall the time the fire started and the time it was extinguished. A review of the testimony attached to the Bill of Exceptions does not show that the witness gave testimony relative to the time the fire was started or extinguished. However, in its brief, the State acknowledges that the witness did testify to these facts.
In view of the fact that several other witnesses testified as to the time, we find no prejudice. In any event, the trial judge is vested with discretion as to the disqualification of a witness who has violated the order of sequestration. LSA-C. Cr.P. Art. 764; State v. Lewis, 250 La. 876, 199 So.2d 907 (1967). We find no abuse of discretion.
Bills of Exceptions Nos. 9, 10, 12, 13, and 14 are without merit.

BILLS OF EXCEPTIONS NOS. 15 and 16
Defendant reserved these bills of exceptions when the trial court sustained the State's objections to a question asked by defense counsel of a defense witness, W. D. McGee. Defense counsel asked McGee, a former policeman, if he had received a call to go to Louis Epps' place in September of 1972, some seven months after the arson incident. The State objected, that testimony regarding the September incident was immaterial and irrelevant to the issues in the case before the court. After the jury retired, defense counsel argued that since the State had been allowed to introduce hearsay evidence to show defendant's motive and intent, he had a right to introduce hearsay to contradict the State's evidence of motive and intent. The jury returned, and the trial court sustained the State's objection of irrelevancy. Thereafter, the defense resumed its questions of McGee and asked the witness if he had gone to Louis Epps' place on a Sunday in September and there heard Dick Epps say to one Gloria Ann Gibson that he would burn her house down like he did the other one if she messed with him. Throughout the fragmented question, the State continually objected, but the witness answered that he had overheard Dick Epps make the remark. The State argued that it had made its objection before the witness answered and moved that the answer be stricken. The court sustained the State's objection and ordered the answer stricken. Counsel for defendant reserved a bill of exceptions to the court's ruling.
*328 The question obviously related to an out-of-court statement by a third person concerning a fire. Moreover, it was not shown to be the same fire on which the charge was based. The evidence was irrelevant hearsay and inadmissible.
We conclude that Bills of Exceptions 15 and 16 are without merit.

BILLS OF EXCEPTIONS NOS. 17, 18, and 19
Defendant reserved these bills of exceptions when the trial court:
(1) refused to allow defense attorney to call witness, Dick Epps, who had been subpoenaed as a State's witness but who had not testified, on cross-examination.
(2) refused to call Dick Epps as the court's witness; and
(3) refused to permit the defense to cross-examine and impeach Dick Epps by pleading surprise and hostility.
When the court refused to allow defendant to call Dick Epps on cross-examination, defendant reserved Bill of Exceptions No. 17. No specific basis for the objection was given at trial or in brief.
We are unaware of any provision in our law which allows a defendant to call such a witness on cross-examination. The defendant cites no authority. Hence, we conclude that the ruling of the trial judge was correct.
Similarly, there is no provision in Louisiana law requiring that the court call a witness in order to afford both sides the opportunity to cross-examine him. See State v. Mims, 263 La. 193, 267 So.2d 570 (1972).
After the court had declined to call Dick Epps as the court's witness, the defendant called him as a defense witness. Defense counsel asked him whether or not he, rather than the defendant, had not burned the house where the victim died. He denied that he had done so. Whereupon, counsel immediately undertook to impeach him by showing a prior oral statement made by him and overheard by others that he had done so. The State objected that the defense could not impeach its own witness without a showing of surprise or hostility. Whereupon, defense counsel, replied that he did plead surprise.
At this point, the trial judge retired the jury and a colloquy occurred between court and counsel. It reflected that defense counsel had not personally verified the witness's testimony prior to trial, but had received a report from third parties that he had made a statement about burning an unidentified house. The trial judge ruled that defendant had made an inadequate showing of either surprise or hostility.
LSA-R.S. 15:487 provides:
"No one can impeach his own witness, unless he have been taken by surprise by the testimony of such witness, or unless the witness show hostility toward him, and, even then, the impeachment must be limited to evidence of prior contradictory statements."
Quite clearly, the witness was not hostile. He merely denied that he committed the crime for which the defendant was charged. His testimony reflected no evasion, reluctance, or reticence.
We are also of the opinion that the showing of surprise was inadequate. The defense obviously was unaware of what the witnesses' testimony would be and he gave no testimony against the defendant or in favor of the State.
Bills Nos. 17, 18, and 19 are without merit.
For the reasons assigned, the conviction and sentence are affirmed.
BARHAM, J., concurs in decree.
NOTES
[1] Art. 768 LSA-C.Cr.P. "If the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence."