353 So.2d 1286 (1977)
STATE of Louisiana
v.
Kenny Wayne WHITMORE.
No. 59832.
Supreme Court of Louisiana.
November 14, 1977.
Rehearing Denied January 27, 1978.
*1288 James F. Abadie, Roy, Kiesel, Patterson, Hudson Joseph P. Brantley, IV, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Lennie F. Perez, Marilyn C. Castle, Asst. Dist. Attys., for plaintiff-appellee.
SANDERS, Chief Justice.
The Grand Jury of East Baton Rouge Parish indicted defendant with the second degree murder and armed robbery of Marshall Bond which occurred on August 15, 1973. After a jury trial, defendant was found guilty on both charges and sentenced to life imprisonment on the murder conviction and ninety-nine years imprisonment without benefit of probation, parole or suspension of sentence on the robbery conviction. The sentences are to be served consecutively. Having specifically abandoned Assignments of Error Nos. 11 and 13, defendant relies upon thirteen assignments of error for reversal of his convictions and sentences.
The offense occurred in the following manner: The victim, an elderly drugstore owner, was known to carry large sums of money on his person. The victim went daily to his pastureland to check on his horses. On the day of the murder, while the victim was at the barn, two young men approached him: the defendant and one Donahue, who was tried separately from the defendant. Donahue grabbed the victim, and both perpetrators brutally beat and stabbed the elderly man. They took approximately $1,000 from the victim and left the scene. A short time later James Robinson, an employee of the victim, found the victim and arranged to have him taken to a hospital, where he subsequently died. After a lengthy investigation, detectives acted on an informer's tip and interviewed defendant on February 8, 1975. Eventually, defendant confessed.
Evidence at trial against defendant consisted primarily of his two taped inculpatory statements and the introduction of a bucket found some distance from the scene of the crime. The defendant testified that his friend, Donahue, gave him a ride home from the place where he worked and took him to Charles Armwood's [or Lockwood's] house. Donahue and the defendant then rode out to talk to the victim in order for Donahue to ask him for a job. Defendant testified that he sat in the car while Donahue went to talk to the victim. He further stated that Donahue and the victim went around the barn, and that, when Donahue returned with a knife and wallet, he told defendant that he had beaten and robbed the victim.

ASSIGNMENT OF ERROR NO. 1
Defendant claims that the court erred in failing to grant a mistrial on its own motion because the prosecutor mentioned defendant's confessions during his opening statement.
In his opening statement, the assistant district attorney described in detail the confessions given by the defendant that were to be used in evidence against him. When the defense counsel objected, the prosecutor admitted that Article 767 of the Louisiana Code of Criminal Procedure clearly prohibits any reference to inculpatory statements before they are admitted into evidence, but he argued that, in opening argument, he was required to explain the nature of his evidence in the case. He argued that, since the bulk of his evidence consisted of defendant's confessions, he properly referred to the confessions, in spite of the clear prohibition in Article 767 of the Louisiana Code of Criminal Procedure.
Defense counsel specifically stated that he did not request a mistrial and that *1289 he opposed a mistrial. The court correctly ruled that the remark did not fall under Article 770 of the Louisiana Code of Criminal Procedure which would mandate a mistrial. The court then admonished the jury that the remarks were not evidence and to disregard them.
Under the circumstances, the question is whether or not the trial court erred in failing to order a mistrial on its own motion over defense counsel's objection. We conclude that there was no error on the part of the trial court.
Article 770 of the Louisiana Code of Criminal Procedure describes four categories of prejudicial remarks which mandate a mistrial when one is requested. The reference to the confessions in this case, although a clear violation of Article 767, does not fall into any of the four categories.
Prior to the adoption of our present Code of Criminal Procedure, in order for a confession to be admissible into evidence, the district attorney was required to mention it in his opening statement. State v. Davis, 241 La. 974, 132 So.2d 866 (1961); State v. Clark, 231 La. 807, 93 So.2d 13 (1957). Articles 767 and 768 of our present Code of Criminal Procedure prohibit reference to a confession until such time as it is offered into evidence. This new procedure avoids the prejudice which might flow from the district attorney's reference to a confession or inculpatory statement later held to be inadmissible. LSA-C.Cr.P. Art. 769, Official Revision Comments (b) and (c). Since the defendant had been put on notice that the State intended to use his inculpatory statements [LSA-C.Cr.P. art. 768] and the statements were later admitted into evidence, the defendant suffered no prejudice from the premature reference to them. LSA-C.Cr.P. arts. 766-769 and Official Comments; State v. Snedecor, La., 294 So.2d 207 (1974); State v. Cannon, 184 La. 514, 166 So. 485 (1936). Hence, the trial court did not err in failing to grant a mistrial on its own motion.
Assignment of Error No. 1 is without merit.

ASSIGNMENTS OF ERROR NOS. 2, 4, AND 15
Prior to trial, defense counsel made two motions requesting the State to advise the defense of any self-incriminating or inculpatory statements made by the defendant to any law enforcement official and further requested the State to provide copies of any written, typed, recorded, or video-taped statements made by the defendant. The State responded that it possessed two tape recorded statements, which were confessions made by the defendant to Baton Rouge law enforcement authorities, and that the defendant had made incriminating oral statements which were unrecorded.
On the third day of trial, defense counsel learned that other statements, not revealed by the State on the above requests, had been tape recorded during lie detector tests. The prosecutor was unaware of the tapes' existence at the time he answered defendant's requests. Upon learning of the tapes, he investigated the matter and found that the recordings had been made after the defendant had made his second confession. At the time the recordings were made, during lie detector tests the defendant took, the authorities considered them at best inconclusive, and most of the tapes had been erased by reuse. The trial judge, prosecutor, and defense attorney listened to the tapes in camera and concluded that "all of the information on that tape recording directly implicated the defendant in this robbery and murder." [Tr. 177.] Defense counsel admitted there was little or nothing on the tape that would have been material or that could have been used in the defense or at the Motion to Suppress. [Tr. 179.] The trial judge who listened to the tape found "that it would not have denied the defendant a fair trial in any way, that it's [not] exculpatory in any way, and would not have aided in the defense." [Tr. 185.]
Defendant contends that the State's failure to disclose the additional statements prevented him from gaining critical evidence of the voluntariness of the confessions which defendant had previously given. He alleges that the failure to disclose and *1290 produce the additional tape recorded statements resulted in a decision on voluntariness based on incomplete information. On this ground, he argues that the trial court should have reheard the Motion to Suppress after the defendant learned of the existence of the statements or granted a mistrial.
This argument is without merit. After hearing the tapes, defense counsel agreed that there was nothing on the tapes which could have helped the defendant's case. In order for a constitutional violation of the duty to disclose to be shown, the omission must be of sufficient significance to amount to a denial of the defendant's right to a fair trial. The tape recordings in question merely repeated defendant's confessions which were introduced into evidence and could not have created "a reasonable doubt that did not otherwise exist." United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976); State v. Bennett, La., 341 So.2d 847 (1976).
Assignments of Error Nos. 2, 4, and 15 are without merit.

ASSIGNMENTS OF ERROR NOS. 3 AND 9
On appeal defendant urges that the trial court erred in failing to sustain his Motion to Suppress the taped inculpatory statements on the grounds that: (1) the district attorney procured his statements by making threats, promises and other inducements; and (2) that he was told by police officers that the results of lie detector tests given to defendant could be used in court against him.
The district attorney testified at the hearing on the Motion to Suppress and refuted defendant's allegations. The trial judge found no coercion or improper inducements. We find no basis for disturbing his finding. See, La., State v. Whitmore, 323 So.2d 133 (1975).
In Louisiana, as well as in most other jurisdictions, the results of a lie detector test or the fact that such a test was given is inadmissible evidence. State v. Davis, La., 351 So.2d 771 (1977); State v. Governor, La., 331 So.2d 443 (1976); State v. Corbin, La., 285 So.2d 234 (1973); State v. Refuge, 264 La. 135, 270 So.2d 842 (1972); McCormick on Evidence, § 207 (2d ed. 1972); Annotation, Physiological or Psychological Truth and Deception Tests, 23 A.L.R.2d 1306 (1952) and supplement; 22A C.J.S. Criminal Law § 645(2); 32 C.J.S. Evidence § 588(4); Skolnick, Scientific Theory and Scientific Evidence: An Analysis of Lie Detection, 70 Yale L.J. 694, 724-28 (1961).
We have carefully examined the transcript of the Motion to Suppress and find that: (1) defendant was advised of his Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), rights and waived those rights prior to each statement; (2) defendant was informed by the officers prior to taking the lie detector tests that he did not have to do so and, if he refused, the fact of his refusal could not be used against him in court; (3) prior to taking the tests, defendant was asked to enter into a stipulation which would permit the use of the results in court, if the court would allow such evidence. Clearly, defendant's agreement to take the lie detector test was a voluntary decision on his part, and, therefore, cannot affect the voluntariness of his subsequent tape recorded inculpatory statements.
Assignments of Error Nos. 3 and 9 are without merit.

ASSIGNMENT OF ERROR NO. 5
Here, defendant argues that the trial court erred in denying his motion to recuse the District Attorney because of his involvement in the investigation and participation in the trial as a witness. He bases this contention on the fact that the District Attorney took the stand at the Motion to Suppress in order to refute defendant's allegation that the District Attorney had made promises of leniency to him in order to induce him to confess and likewise testified at the trial in laying the foundation for the admission of the confession. Also, defendant again points out the discrepancy between his own testimony at the motion to suppress hearing, which indicates that the District Attorney appeared alone in the room where he was being interrogated to *1291 attempt to induce him to confess, and the District Attorney's testimony that he was never in the room alone with the defendant.
The District Attorney's participation in this case was routine and not at all a proper ground for a motion to recuse. State v. Bennett, La., 341 So.2d 847 (1976). Moreover, prior to trial, the defendant presented the issue of recusal of the District Attorney to this Court in an application for writs. In denying his writ application, La., 323 So.2d 133 (1975), we stated: "Application denied. There is no error in the trial judge's denial of the motion to recuse."
Assignment of Error No. 5 is without merit.

ASSIGNMENTS OF ERROR NOS. 6, 7, AND 8
Here, defendant argues that the trial court erred in failing to rehear his motion to suppress at trial and in failing to require the State to lay a foundation outside the presence of the jury before admitting the inculpatory statements. The original motion to suppress the inculpatory statements had been heard and denied by another judge.
The inculpatory statements at issue are the two February, 1975, statements given orally by defendant and tape recorded by the police. Defendant filed a motion to suppress these two statements which was denied by Judge Lear after a hearing. When the case came to trial before Judge Gonzales, he refused to reconsider the admissibility of the statements on the ground that, under Article 703 of the Louisiana Code of Criminal Procedure, he was bound by Judge Lear's ruling on the motion. Defendant asserts that Judge Gonzales was not bound by the prior ruling because the motion to suppress "a written confession or written inculpatory statement" is not applicable to a tape recorded confession or inculpatory statement. LSA-C.Cr.P. art. 703.
Defendant's argument is without merit. The State was required to show the admissibility of the confession outside the presence of the jury. The defendant filed a Motion to Suppress the taped statements prior to trial. A hearing on that Motion to Suppress was held on October 1, 1975. The State presented its evidence regarding the voluntariness of that confession. The defendant also testified at the hearing. On the basis of the evidence presented, the trial judge found the statements to be admissible. Clearly, the defendant was afforded a review of the admissibility of his confession outside the presence of the jury.
A pre-trial ruling on a motion to suppress a confession or inculpatory statement is binding at the trial on the merits. If the confession is ruled admissible, no additional hearing by the judge to determine admissibility is required at the trial. LSA-C.Cr.P. art. 703(B); State v. Whatley, La., 320 So.2d 123 (1975).
Defendant contends that the hearing on the motion to suppress was invalid because his confession was a taped oral confession. He argues that a motion to suppress is limited to "a written confession or written inculpatory statement" by Article 703 of the Louisiana Code of Criminal Procedure.
Assuming that the motion to suppress is not an appropriate procedure for testing the voluntariness of a taped oral confession, the defendant is entitled to no relief here.
Defendant, himself, raised the issue of the admissibility of the confession through the filing of a Motion to Suppress. He requested the hearing and sought the pretrial determination of the admissibility of the confession. Hence, defendant is precluded from urging this procedure as error on appeal.
Assignments of Error Nos. 6, 7, and 8 are without merit.

ASSIGNMENT OF ERROR NO. 10
Defendant urges on appeal that the trial court committed error when it allowed a bucket, found after the crime and a considerable distance from the scene, to be admitted into evidence.
Defendant asserts that the bucket should not have been admitted, because the State allegedly failed to show that this bucket *1292 was the one missing from the scene of the crime.
Relevant evidence is that which tends either to show the commission of a crime and/or intent, or to negate the commission of a crime and/or intent. Those facts which are necessary to explain a relevant fact or which support an inference raised by such a fact, are admissible. LSA-R.S. 15:441; State v. Giles, 253 La. 533, 218 So.2d 585 (1969). The standard test for relevancy is whether or not "there is a logical or rational connection between the fact which is sought to be proved and the fact which is at issue in the case." State v. Giles, supra.
The bucket defendant complains of is clearly relevant and admissible evidence. It was identified as being the one missing from the scene of the crime. The bucket tends to corroborate the defendant's confession in that it was found at the place where defendant confessed to leaving it.
Assignment of Error No. 10 is without merit.

ASSIGNMENT OF ERROR NO. 12
Here, defendant alleges that the trial court erred in allowing the prosecutor to question the defendant about details of prior convictions.
In response to questions by defense counsel on direct examination, defendant testified:
"Q. Now, Kenny, you been in trouble once before, haven't you?
"A. Yes, I've been in trouble once before.
"Q. You don't deny that, do you?
"A. No.
"Q. That was a robbery?
"A. Yes, it was." [Tr. 368-369.]
On cross-examination, the prosecution asked defendant if he had ever been convicted of a crime. Defense counsel objected to the question, and the objection was overruled. Following are the questions and answers complained of:
"Q. Kenny, have you on September 30, 1976, here in this very same courtroom, is it not a fact that you were convicted of the armed robbery of Mrs. Matthews out in Zachary?
"THE COURT: Before you answer . . .
"[DEFENSE COUNSEL]: I'm going to object . . .
"THE COURT: Mr. Whitmore, you can answer to the nature of the offense but not to any details if in fact you have been convicted of a previous offense. Go ahead and ask the question.
"Q. Were you convicted of the armed robbery of Mrs. Matthews?
"A. Yes, I was.
"Q. Were you also convicted of the armed robbery of Bill Messer?
"A. I don't know a Blanford Melton.
"Q. Who?
"A. I don't know Blanford Melton.
"Q. You know where Bill's shoe store is?
"A. Yes, I do.
"Q. Do you know the man that owns it?
"A. Yes, I do.
"Q. Were you convicted of the armed robbery of that man?
"A. Of that store, yeah." [Tr. 385-386.]
Defendant argues that this questioning went beyond the permissible scope of inquiry because it elicited the details of the crimes.
This Court has held that in such an impeachment, sufficient details are admissible to establish the true nature of the offense. See State v. Jackson, La., 307 So.2d 604 (1975); State v. Elam, La., 312 So.2d 318 (1975). In the present case, however, we need not rely on that jurisprudence. It is evident that the State's questions were directed toward determining exactly the crimes of which defendant had been convicted, not the factual details of each offense. The victims were named in order to identify the conviction for defendant's response. See State v. Victor, La., 347 So.2d 205 (1977).
We conclude that the assignment of error lacks merit.

*1293 ASSIGNMENT OF ERROR NO. 14
Defendant urges that the court erred in failing to sustain his objection to the district attorney's closing argument concerning the guilt of the defendant.
Defendant complains that, in his closing argument, the district attorney did not confine his argument to evidence admitted, to the lack of evidence, the conclusions of fact that the State or defendant may draw therefrom, and to the law applicable to the case. See LSA-C.Cr.P. art. 774. He also argues that the district attorney expressed his personal opinion on the guilt of the defendant. See State v. Sawyer, La., 350 So.2d 611 (1977); State v. Kaufman, La., 304 So.2d 300 (1974).
Following are the two statements complained of:
"Kenny Whitmore in his own voice from the tape recording, the second tape recording I played for you, admitted that they took almost a thousand dollars. Said, I got four fifty or four twenty-five, and Donahue got around five hundred. That's a theft from the person of another, by force or intimidation. I don't think there's been a case of more force involved in an armed robbery in this parish in years, brutal, vicious force. Taken from his pocket, a thousand dollars." [Tr. 415.]
"We do not have and we cannot show you exactly what these weapons were. We know only, from the type of wounds Mr. Bond received, what could and from what Mr. Whitmore told you on that tape what these weapons were. A tire tool or something of the nature of a tire tool. How was it used? It was used to bash in Mr. Bond's skull. A screwdriver, Phillips or standard. How was it used? It was used to stab him, stab him in the arms and the chest and the back countless number of times. Are these articles which come in within this term? [`dangerous weapon'] Any instrumentality which is calculated to produce great bodily harm. How could you produce any more bodily harm to a person with an instrumentality than the wounds that Doctor Landry got up here and testified about? So we have indeed in this case a murder in the second degree and an armed robbery." [Tr. 417-418.]
The first statement is a proper summation of the evidence in the case. The evidence reveals that the victim was stabbed repeatedly with a screwdriver and beaten about the head with a blunt instrument. It was a brutal crime, and no error occurred when the prosecutor characterized it as such.
Defense counsel made no objection to the second statement either during or after argument; therefore, the issue is not preserved for our review. LSA-C.Cr.P. art. 841; State v. Gaines, La., 347 So.2d 1153 (1977). We note, however, that the prosecutor's statements are within the proper bounds of closing argument.
Assignment of Error No. 14 is without merit.
For the reasons assigned, the convictions and sentences are affirmed.
DIXON, J., concurs.
DENNIS, J., concurs disagreeing with statement that the district attorney's closing remarks were within proper bounds.