STOKER, Judge.
The defendant, Oliver Ray Mayberry, was charged with the second degree murder of Jonathon Barriere, a violation of LSA-R.S. 14:30.1. After a jury trial, he was convicted of manslaughter, a violation of LSA-R.S. 14:31, and sentenced to eighteen years in the custody of the Department of Corrections. We affirm.
FACTS
The events leading up to the death of Jonathon Barriere occurred during the evening of August 14, 1982. The victim and the defendant lived in the same house in Grand Coteau along with the victim’s infant son and its mother, Joyce Lee; his mother, Ignatia Richardson; his sister, Pamela Barriere, and her infant son; his twelve year old brother, Bobby Richardson; and another man, Elhambra Olatunjgi. Also present the night of the shooting was Paul Guilbeau, Pam’s boyfriend.
The defendant, the victim, and Mr. Ola-tunjgi had been drinking beer most of the afternoon on August 14, 1982. Later that evening the defendant and the victim went out to buy some whiskey. According to the defendant’s testimony, he and the victim got a ride with Greg Miller. The defendant claimed that during an argument in the car, the victim pulled out a knife. The two returned home and, along with Mr. Olatunjgi, consumed a fifth of whiskey.
Sometime during the evening, the three men began discussing their weight, and the victim lifted both Mr. Olatunjgi and the defendant, apparently to demonstrate that they did not weigh much. Mr. Olatunjgi went to bed around 10:30 PM, and sometime after that an altercation broke out between the victim and the defendant. The State’s witnesses testified that in picking the defendant up the victim lost his balance causing them both to fall. The defendant claims that the victim lunged at him for no apparent reason causing the fall. A scuffle followed during which no real punches appear to have been thrown.
After stopping the altercation, Mrs. Richardson told everyone to go to bed. Shortly thereafter, the victim entered the bedroom shared by his brother, Bobby, and the defendant. The victim’s infant son, who normally slept with his parents, was asleep in the room at this time. The defendant claims that he heard sounds as if the victim were being held back from entering the room and, as he entered, the defendant claims to have seen a knife in the victim’s hand. The defendant fired four shots killing the victim. Bobby testified that the last three shots were fired after the victim had fallen. No knife was found.
On appeal, defendant argues that the trial court erred in:
1. Admitting into evidence a photograph of the victim which is alleged to be inflammatory and prejudicial;
*787 2. Admitting into evidence photographs which were not revealed through discovery;
3. Denying a motion for mistrial made on the claim that the state introduced inculpatory statements outside the scope of its opening statement;
4. Denying a motion for mistrial based on improper evidence of a prior arrest of a defense witness;
5. Failing to sustain an objection to an improper statement of the law made by the prosecution in closing argument;
6. Allowing the questioning of potential petit jurors in the presence of the entire jury venire, and;
7. Convicting the defendant on insufficient evidence.
ASSIGNMENT NUMBER ONE
Defendant argues in this assignment that a black and white photograph of the victim was improperly admitted into evidence. (The photograph was identified as State’s Exhibit 9.) Defendant takes the position that because it was stipulated that he fired the fatal shots, the prejudicial effect of the photograph outweighed any probative value it may have had. We disagree.
The photograph in question shows the victim’s upper body. The only wound visible in this photograph is a grazing bullet wound on his cheek. Since the photograph is black and white no blood can be seen. The test for admissibility of allegedly gruesome photographs is whether their probative value outweighs any prejudicial effect and a trial court’s ruling in this regard will only be disturbed if the prejudicial effect of the photographs clearly outweighs the probative value. State v. Boyer, 406 So.2d 143 (La.1981).
We find that the photograph is not gruesome and could have had no prejudicial effect on the jury. In any event, the probative value clearly outweighed any prejudice which may have been created. Defendant claimed he fired on the victim in self-defense and that all shots were fired as the victim approached him. The path of the bullet indicated by the photograph supports the State’s version of the shooting, namely, that only the first shot was fired while the victim was standing. Thus, the photograph was highly probative as to the issue of self-defense and justification.
ASSIGNMENT NUMBER TWO
By this assignment defendant asserts that the trial judge erred in allowing certain photographs into evidence when the defense believed as a result of the State’s answer to a pre-trial discovery motion that no photographs would be introduced at trial. This objection was made only as to the photographs identified as State’s Exhibits 8A-C. The photograph discussed in Assignment Number One was objected to only on the grounds discussed above and State’s Exhibit 7A-F and H were admitted without objection. The photographs in Exhibit 7 merely illustrate the scene of the crime.
The photographs objected to show a bullet lodged in the baseboard of the bedroom in which the shooting occurred. This evidence supports the State’s theory of the crime. The State asserts in its brief that it only became aware of the bullet in the baseboard the day before trial. Defense counsel was informed at 8:00 AM on the day of trial that the photographs would be used. The photographs were made about 9:45 AM on the morning of trial.
Under LSA-C.Cr.P. art. 729.3, the State has a continuing duty to notify the defendant and the court of additional evidence. It appears that the State met this duty and gave notice of the additional evidence as soon as it came to light. Defense counsel made no motion for continuance to conduct additional discovery, but sought only to have the photographs excluded. We cannot say that the trial court abused its discretion under LSA-C.Cr.P. art. 729.5 in this case. See State v. Feeback, 414 So.2d 1229 (La.1982).
*788 ASSIGNMENT NUMBER THREE
In this assignment defendant argues that he was entitled to a mistrial on the ground that the State improperly introduced an inculpatory statement without having mentioned it in the opening statement. For this argument defendant relies on LSA-C. Cr.P. art. 769 which provides in part:
“Evidence not fairly within the scope of the opening statement of the state shall not be admitted in evidence.”
The State relies on the mandate of LSA-C.Cr.P. art. 767 which provides:
“The state shall not, in the opening statement, advert in any way to a confession or inculpatory statement made by the defendant.”
Defendant argues that the Louisiana Supreme Court’s holding in State v. Whitmore, 353 So.2d 1286 (La.1977), makes it clear that the State should have either mentioned the inculpatory statement in its opening or not admitted it into evidence at trial. We disagree. In Whitmore, the defendant sought a mistrial on the ground that the State improperly mentioned his confessions in its opening statement. The Court held that because the defendant had been given notice of the State’s intent to use the confessions as required by LSA-C. Cr.P. art. 768 and because the confessions were admitted at trial “the defendant suffered no prejudice from the premature reference to them.” It is clear that the Court in Whitmore did not approve mention of inculpatory statements in the opening statement, but merely found it to be harmless error in that particular case.
In our case, the State properly complied with the clear mandate of LSA-C. Cr.P. art. 767 and refrained from mentioning any inculpatory statements in its opening statement. The defendant had been notified that the State intended to use the statements. This assignment of error is without merit.
ASSIGNMENT NUMBER FOUR
Defendant argues that a mistrial should have been granted when the State introduced evidence of a prior arrest to impeach a defense witness in violation of LSA-R.S. 15:495. The evidence objected to was brought out during the following colloquy between the prosecutor and defense witness, Patrick Bruno:
“Q. Mr. Bruno, where do you live, now?
A. In Grand Coteau.
Q. You live in Grand Couteau?
A. Yes.
Q. Today, you’re living in Grand Co-teau?
A. No, sir, I’m living in St. Landry Parish.
Q. Where were you living when Jonathan Barriere was killed?
A. In Grand Coteau.
Q. Were you in Grand Coteau at the time?
A. Yes, sir.
Q. You weren’t living somewhere else?
A. No, sir.
Q. You were sleeping in Grand Coteau every night at that time?
A. Yes, sir.
Q. This was August 15th, you weren’t in Lafayette at that time?
A. The night of the shooting, I was in Lafayette.
Q. Where were you in Lafayette, the night of the shooting?
MR. HEBERT: Your Honor, I’m going to object to the relevency of where he was.
THE COURT: Objection is overruled.
A. In Lafayette Parish Jail.”
After this testimony was given defendant moved for a mistrial which the trial judge denied.
The jury could infer from the above testimony that Mr. Bruno was under arrest on the night of the shooting, but the questioning was not specific as to the reason he was in the parish jail. The State wanted to dispel the impression that Mr. Bruno was in the community on the night of the shooting. Even assuming that this questioning is protected by LSA-R.S. 15:495, the de *789 fendant’s rights were not so prejudiced so as to require a reversal of the conviction.
Mr. Bruno’s testimony was introduced for the purpose of showing the dangerous character of the victim. However, he testified only that the victim was known as a bully. He had never seen the victim actually get in a fight or threaten anyone with a weapon. The other defense witness who testified as to the victim’s character had also never seen the victim actually fight or threaten anyone with a weapon. He characterized the victim as a “loud, boastful fellow.” The testimony of these defense witnesses does little to overcome the State’s showing that the defendant did not act in self-defense. Thus, the trial court’s error, if any, was harmless. See State v. Connor, 403 So.2d 678 (La.1981), and State v. Clark, 340 So.2d 208 (La.1976), cert. denied, 430 U.S. 936, 97 S.Ct. 1563, 51 L.Ed.2d 782 (1977).
ASSIGNMENT NUMBER FIVE
In this assignment defendant argues that the trial court erred in failing to sustain his objection to an improper statement of the law made by the prosecutor in closing argument. The objectionable statement is as follows:
“... The Judge will tell you that you have an obligation of retreat if there has been provocation, you have the obligation to get away ...”
Upon defendant’s objection, the court gave the following admonition to the jury:
“The objection is overruled, but I will instruct the jury that I will instruct you as to what the law is that you are to consider or apply to the facts as you find them to be. That if what I tell you is the law disagrees with what one of the attorneys may argue what the law is, or even what you think the law should be, then you are to follow the law under your oath as I give it to you.”
Any erroneous implication from the prosecutor’s uncompleted statement was clarified in the charge to the jury. The judge’s immediate admonition that he would instruct the jury as to the law prevented any prejudice against the defendant. In any event, the evidence presented did not support the defendant’s assertion of self-defense. State v. Tolbert, 390 So.2d 510 (La.1980).
ASSIGNMENT NUMBER SIX
Defendant argues in this assignment that he suffered prejudice as a result of the trial court’s permitting the questioning of potential jurors in the presence of the entire venire. In particular, he complains that a prospective juror who had been a deputy, sheriff tainted the venire by his statement that he would possibly give more weight to a State’s witness rather than a defense witness. This individual was rejected by the defense.
No objection regarding this matter is apparent from the record, a fact which will preclude review on appeal. See LSA-C.Cr.P. art. 841. However, we note that it has not been shown that the defendant was prejudiced by the former deputy’s remarks. Defense counsel did not question any other members of the venire as to whether they had heard the remarks or whether they would be influenced by them. State v. Cushenberry, 407 So.2d 700 (La.1981). Absent a showing of prejudice, this assignment of error must be found meritless.
ASSIGNMENT NUMBER SEVEN
Defendant’s final claim is that the verdict is contrary to the law and the evidence. He asserts that the evidence was insufficient to establish that the defendant did not act in self-defense. We disagree.
In support of this claim defendant cites State v. Patterson, 295 So.2d 792 (La.1974). In that case, all witnesses testified that the victim was approaching the defendant with a knife at the time of the shooting. That is not the case here. Only the defendant asserts that the victim was armed with a knife and was approaching him. The altercation between the two was completely over according to all witnesses except defendant and the eyewitness testified that *790 three shots were fired at the victim after he had fallen. The only evidence presented concerning the dangerous character of the victim consisted of verbal assaults, no physical confrontations. This character evidence was rebutted by the Grand Coteau Chief of Police who testified that the victim did not have a bad reputation in the community.
In reviewing this matter under the standard set out in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), we find that the jury could have easily found beyond a reasonable doubt that the defendant did not act in self-defense. The evidence was sufficient to support the verdict.
For all of the above reasons, the defendant’s conviction and sentence are affirmed.
AFFIRMED.